HARRISON v. CRAVENS et al.—155 S. W. (2d), 873.

Middle Section. October 11, 1941.

Petition for Certiorari denied by Supreme Court, December 6, 1941.

216

Ben E. Groce, of Byrdstown, for plaintiff in error.
Ward R. Case, of Jamestown, for defendant in error Cravens.
Will R. Storie, of Jamestown, for defendant in error Reagon.

HOWELL, J.   This suit was instituted by plaintiff, J. P. Harrison, for the amount due upon a promissory note payable to him in the sum of $1,000 upon which payments had been made until the balance due was $109.25.   The note in full was as follows:
"Attorneys Fee Note
"Byrdstown, Tenn., March 21st, 1938.
"$1,000.00
"On April 8th, 1938, after date we promise to pay to the order of J. P. Harrison $50.00 and $50.00 on the 8th of each month thereafter until paid, One Thousand & No/100 Dollars, Value received, If this note is not paid at maturity and is put in the hands of an attorney for collection, we agree to pay the cost of collection, including a reasonable attorney's fee.
"M. H. Cravens,
"A. C. Cravens, Sec.,
"J. B. Reagon, Surety."
On the back of the note were credits, the first one being $50 paid on April 14, 1938, and the last payment being $25 on June 13, 1940. There is no controversy about the credits or the amount of the balance due.   The suit was brought in August, 1940.

The facts are that M. H. Cravens bought an automobile from J. P. Harrison with which to carry mail from Livingston to Jamestown, Tennessee, for the sum of $1,000 payable $50 per month until paid in full.   He procured the defendants J. B. Reagon and A. C. Cravens to sign the note with him, Reagon signing as Surety and A. C. Cravens writing "Sec." after his name.   Reagon and A. C. Cravens did not receive any part of the consideration for the note but signed purely to accommodate M. H. Cravens, who was being paid $100 per month for carrying the mail and was to haul passengers also. M. H. Cravens at the time the note was given was also operating a grocery store and restaurant in Jamestown and was solvent.   He

afterwards became insolvent, failed to pay the balance due upon the note and suit was brought.

The original payee of the note J. P. Harrison is the plaintiff herein.

Each of the defendants Reagon and A. C. Cravens filed pleas claiming that they were not liable for the balance due on the note because plaintiff brought his cause of action against them without having given them notice of the dishonor of payment of the note as required in Section 7413 of the Code of Tennessee, and no waiver of said notice of dishonor had been executed by them and the note itself contained no such waiver of notice. The plaintiff joined issue on these pleas.

Upon the hearing a judgment was entered against M. H. Cravens for the amount sued for with interest, attorney's fees and costs, the pleas of the defendants J. B. Reagon and A. C. Cravens were sustained and the suit dismissed as to them. The plaintiff after his motion for a new trial was overruled, prayed and was granted an appeal in the nature of a writ of error from the action of the Court in dismissing his suit as to J. B. Reagon and A. C. Cravens and has assigned errors as follows:

"It was error for the Court to allow the defendants, J. B. Reagon and A. C. Cravens to file their pleas of discharge under Section 7413 of the Code. This section provides only the 'drawers and indorsers' be discharged for failure to give notice of dishonor— it appearing on the face of the note that both of these defendants, were accommodation-makers of the note sued on (Bill of Ex., p. 4, 5).

"It was error for the Court to allow defendants', J. B. Reagon and A. C. Cravens, joint pleas averring that they are secondarily liable on the note, as only drawers, indorsers, acceptors and guarantors, may thus plead; Section 7384 makes the makers of a negotiable instrument primarily liable on the instrument which is executed by them as such 'makers.'

"It was error for the Court to allow the further plea of defendants that M. H. Cravens became insolvent after the maturity of the note sued on. Insolvency of a co-maker may not be pleaded unless and only after such *accommodation maker* has given notice to the holder of the debt to make collection against the principal maker, and such holder wilfully refused to proceed on maturity of the instrument to move against such principal maker and the *accommodation maker*. This the accommodation-maker failed to do.

"The Court erred in not rendering judgment in favor of the plaintiff, J. P. Harrison, for the full amount of the note and costs, against the defendants, J. B. Reagon and A. C. Cravens, as parties primarily liable on the note which they acknowledge they signed before delivery to the plaintiff."

All the assignments will be considered together. The question therefore to be determined is whether or not these two defendants

are liable for the balance due on this note in the absence of notice of dishonor as provided by the negotiable instruments statute. A. C. Cravens did not know of the dishonor of the note until September, 1940, and Reagon was notified in June, 1940.

Section 7413 of the Code which is relied upon by the defendants is as follows: *"To whom notice of dishonor must be given.*—Except as herein otherwise provided, when a negotiable instrument has been dishonored by non-acceptance or non-payment, notice of dishonor must be given to the drawer and to each indorser, and any drawer or indorser to whom such notice is not given is discharged."

Section 7438 of the Code is as follows:

*"When notice need not be given to drawer.*—Notice of dishonor is not required to be given to the drawer in either of the following cases:

"(1) Where the drawer and drawee are the same person:

"(2) When the drawee is a fictitious person or a person not having capacity to contract;

"(3) When the drawer is the person to whom the instrument is presented for payment;

"(4) Where the drawer has no right to expect or require that the drawee or acceptor will honor the instrument;

"(5) Where the drawer has countermanded payment."

Section 7353 of the Code is as follows: *"Liability of accomodation party.*—An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

The payee of a note may be the holder for value although Section 7376, where a holder in due course is defined, does not include the payee or drawee. Farmers' and Merchants Bank v. Bank of Rutherford, 115 Tenn., 64, 88 S. W., 939, 112 Am. St. Rep., 817. See, also, Figuers v. Fly, 137 Tenn., 358, 193 S. W., 117.

This question is fully discussed by Chief Justice Green in the case of Snyder v. McEwen, 148 Tenn., 423, 256 S. W., 434. Also, see Nickey Bros. v. Lonsdale Mfg. Co., 149 Tenn., 391, 258 S. W., 776.

An accommodation maker is primarily liable upon a note even though he signed the word "Surety" after his name. By the terms of the Negotiable Instruments Act he is primarily liable. Merchants' Bank & Trust Co. v. Bushnell, 142 Tenn., 275, 218 S. W., 709. Lovelace-Farmer Co. v. Shaw, 4 Tenn. App., 458; Graham v. Shephard, 136 Tenn., 418, 189 S. W., 867, Ann. Cas. 1918E, 804.

Section 723 of American Jurisprudence, Volume 8 on page 398, is as follows:

"*Sureties.*—A surety on a promissory note is not entitled to notice of its dishonor when due and unpaid. As between himself and principal, his liability may be dependent on their private agreement; but as to all others, he is primarily liable as a maker. This arises from the fact that his name appears along with that of the maker and that to third persons he is an apparent maker. Inasmuch as there is nothing on the face of the paper to show that any other agreement exists, credit is presumed to be extended to it with this understanding. The Uniform Act clearly points out the well-settled distinction between persons primarily liable and those secondarily liable on commercial paper. 'The person "primarily" liable on an instrument is the person who, by the terms of the instrument, is absolutely required to pay the same. All other parties are "secondarily" liable.' A surety, it has been held, comes squarely within the definition of a person whose liability is primary, for he is, by the terms of the instrument, absolutely required to pay the same."

In the case of Atlantic Life Insurance Co. v. Carter, 165 Tenn., 628, 57 S. W. (2d), 449, 450, Justice McKinney quotes extensively with approval from the opinion in the case of Union Trust Company v. McGinty, 212 Mass., 205, 98 N. E., 679, Ann. Cas. 1913C, 525, in part as follows:

"Approaching the act from this point of view, it is apparent that no relation of principal and surety is established or contemplated by any of its sections. It determines the liability of the various parties to the negotiable instrument on the basis of that which is written on the paper. The obligation of all makers, whether for accommodation or otherwise is to pay to the holder for value according to the terms of the bill or note. Their obligation is primary and absolute. . . . The act makes no provision for the proof of another and different relation than that expressly undertaken and defined by the tenor of the instrument signed. The fact that one is an accommodation maker gives rise to a duty no less or greater or different to the holder for value than that imposed upon a maker who received value. This is expressly provided by the act, even though such holder knew at the time of making that the maker was an accommodation maker."

By Section 7394 of the Code presentment for payment is not necessary in order to charge the person primarily liable on the instrument.

In the case of Binghampton Pharmacy v. First Nat. Bank, 131 Tenn., 711, on page 714, 176 S. W., 1038, on page 1039, 2 A. L. R., 1377, Justice Green said:

"The argument is that section 87 of the act of 1899, making any instrument payable at a bank, the equivalent of an order on the bank, puts upon the holder of a note payable at a bank the same

duties as rest upon the holder of an ordinary check. Quite a plausible brief is offered in support of this contention, to which we might assent, were it not for section 70 of the act of 1899, which contains this language:

" 'Presentment for payment is not necessary in order to charge the person primarily liable on the instrument; but if the instrument is, by its terms, payable at a special place and he is able and willing to pay it there at maturity, such ability and willingness are equivalent to a tender of payment upon his part.'

"The difference between the drawer of a check and the maker of a note is that the latter is primarily liable on the instrument, while the former is not. The maker of a note 'by the terms of the instrument is absolutely required to pay the same.' That is to say, he is primarily liable on the instrument. Page 140. The drawer of a check or bill of exchange is not primarily liable, but he engages that if the instrument be dishonored he will pay the amount thereof to the holder or subsequent indorser, who may be compelled to pay it. Section 61.

"The provisions of section 70 therefore, which we have quoted above, do not apply to the drawer of a check or bill of exchange, while they do apply to the maker of a note."

Also on page 715 of 131 Tenn., on page 1039 of 176 S. W., 2 A. L. R., 1377, Justice Green said:

"As between him and the maker of a note, no such duty rests upon the holder of a note with respect to presentment. By the terms of the act (section 70) presentment is not necessary to charge the person primarily liable on the instrument.

"The obligation of the maker of a note is not a conditional promise to pay only at a specified place, but is a promise to pay generally, even though a place of payment is named."

A. C. Cravens and J. B. Reagon even though they received no consideration for the execution of the note in question, by signing same as they did obtained the credit for M. H. Cravens and became primarily liable to the holder.

It results that we think the learned trial judge erroneously applied the law to the facts of this case and the assignments of error are sustained and the lower Court reversed.

A judgment will be entered here against A. C. Cravens and J. B. Reagon for the sum of $109.25 plus $25 as attorney's fees for the attorney for plaintiff with interest from September 25, 1940, and the costs of the cause.

Reversed.

Crownover, P. J., and Felts, J., concur.