**In the Matter of Horace CARPENTER, Debtor.**

**No. 70–146.**

United States District Court,
W. D. Tennessee, W. D.

June 8, 1973.

Norman P. Hagemeyer, Kirkpatrick & Lucas, Memphis, Tenn., for petitioner.

William M. Gotten, Lane, Wages, Gotten & Lane, Memphis, Tenn., for debtor.

## ORDER ON PETITION TO REVIEW

WELLFORD, District Judge.

This cause is before the Court on petition to review an order of the Referee in Bankruptcy granting debtor's Petition for Reimbursement and Permanent Injunction. It appears from the pleadings in this matter and from the Referee's findings of fact that the debtor, Horace Carpenter, filed a wage earner plan under Chapter XIII of the Bankruptcy Act on January 21, 1970, and listed Kroger Employees Federal Credit Union (hereafter KEMBA) as a creditor in Schedule A-2 in the amount of $1,100, which amount represented the balance due on moneys borrowed by the debtor from the creditor, KEMBA. The debtor offered a plan whereby creditor would receive $50.00 per month from the plan until the debt was liquidated. At the adjourned First Meeting of Creditors on February 25, 1970, the plan for extension of the debts was confirmed. On February 11, 1970, KEMBA filed a proof of claim alleging a debt in the amount of $1,055.-54 and neither accepting nor rejecting the proposed plan, but adding a footnote to the proof of claim as follows:

"14—we do not know what the debtor's plan is." The creditor was then informed of the terms of the plan and subsequently, on March 10, 1970, the creditor returned the proof of claim accepting the plan. The debtor agreed to the amount claimed and gave the Trustee authority to pay $1,055.54 from the plan to the said creditor. On May 4, 1972, the Trustee filed her final report showing that the full amount of $1,055.54 had been paid to the creditor and this debt was discharged by Order of the Court on that same day. The case was closed on May 9, 1972.

It further appears, however, that prior to the filing of the wage earner plan the debtor became co-maker on five different notes made payable to the creditor executed by other Kroger employees. The debtor had signed merely as an accommodation co-maker and received none of the proceeds. At or about the time the debtor filed his wage earner plan, two of his fellow employees defaulted on their notes and on January 31, 1970, the creditor charged debtor's account with $150.92 and $108.26, respectively, which amounts represented debtor's pro rata share of the promissory notes upon which debtor had signed as an accommodation party (along with as many as 20 other fellow employees on any one particular note). Subsequently, but prior to debtor's discharge, there were defaults on three other notes on which debtor had signed as an accommodation co-maker, and KEMBA also charged debtor's account $132.40, $111.-35 and $120.73 for these three notes. The total charges against debtor's account for the five co-maker notes were $623.66. The creditor also added $327.-26 to the debtor's account as interest on the entire unpaid balance of debtor's account, which interest was computed at the rate of 1% per month.

On August 5, 1972, after discharge, the creditor began to deduct the sum of $39.00 from debtor's weekly salary to apply against its claimed balance ($623.-66 plus $327.26). This was done for five weeks and a total of $195.00 was taken from debtor's salary and applied to his purported account with KEMBA. At that point debtor filed a Petition to Re-Open and Re-Refer the Case to the Referee in Bankruptcy and for Reim-

bursement and Permanent Injunction. The case was reopened and after a hearing the Referee held:

1. The claims of KEMBA based on the five notes on which debtor was an accommodation co-maker were discharged on May 4, 1972;

2. The debtor is entitled to be reimbursed for the $195.00 improperly deducted from his salary by the creditor; and

3. The debtor is entitled to a permanent injunction prohibiting creditor from withholding any future sums from the debtor's salary or from employing any process to collect the alleged debt.

■ When the debtor filed his wage earner plan on January 21, 1970, he listed KEMBA as creditor/payee on a promissory note executed by debtor on August 20, 1969. Debtor did not, however, list the five notes on which he was an accommodation co-maker. In Tennessee, as elsewhere, an accommodation maker is primarily liable on a note. The Uniform Commercial Code, TCA 47–3–415 provides that:

"(1) An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it.

(2) When the instrument has been taken for value before it is due the accommodation party is liable in the capacity in which he has signed even though the taker knows of the accommodation."

The official comments to section 3–415 of the U.C.C. discuss the nature of an accommodation maker:

"1. Subsection (1) recognizes that an accommodation party is always a surety (which includes a guarantor), and it is his only distinguishing feature. He differs from other sureties only in that his liability is on the instrument and he is a surety for another party to it. His obligation is therefore determined by the capacity in which he signs. °An accommodation

maker or acceptor is bound on the instrument *without any resort to his principal.* . . ." (emphasis ours)

This present-day rule of primary liability for accommodation makers conforms to the law in Tennessee under the prior Negotiable Instruments Law as set forth in the cases of Merchants' Bank & Trust Co. v. Bushnell, 142 Tenn. 275, 218 S.W. 709 (1919) and Harrison v. Cravens, 25 Tenn.App. 215, 155 S.W.2d 873 (1941).

■ It is undisputed that the five notes in question here were executed before the wage earner plan was filed. Thus, these notes were primary liabilities of the debtor at that time. Although the debtor was responsible for scheduling all of his debts to creditors and the nature of their respective claims, the creditor was also responsible for proving *all* the claims to which it believed itself entitled since in a wage earner proceeding creditors must prove and establish their claims before they are entitled to a distribution. In re Heger, 180 F.Supp. 147 (D.Minn.1959); In re Maye, 180 F.Supp. 43 (D.Va.1958); Phillips' Nadler, Sec. 502 (1972). The creditor here had notice of the wage earner proceedings and should have filed proofs of claims on all the notes bearing Carpenter's name. Section 660 of the Bankruptcy Act, 11 U.S.C. § 1060 provides:

"Upon compliance by the debtor with the provisions of the plan and upon completion of all payments to be made thereunder, the court shall enter an order discharging the debtor from all his debts and liabilities provided for by the plan, but excluding such debts as are not dischargeable under section 17 of this Act [§ 35 of this title] held by creditors who have not accepted the plan."

Section 17 of the Bankruptcy Act, 11 U.S.C. § 35, moreover, provides in part:

"(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . .

(3) have not been duly scheduled in time for proof and allowance, with the name of the creditor, if known to the bankrupt, *unless such creditor had notice or actual knowledge of the proceedings in bankruptcy.* . . ." (emphasis ours)

The debtor listed KEMBA as a creditor when filing his wage earner plan and then complied with the provisions of the confirmed plan to which KEMBA assented. We therefore conclude under the circumstances that the claims of KEMBA based on all five notes on which the debtor was an accommodation maker are discharged and that the Referee was correct in so holding.

The second question presented by the petition to review concerns the Referee's disallowance of interest on the debt owed by Carpenter to KEMBA during the period of time that the wage earner plan was being administered. KEMBA asserts that the debtor is liable for interest on the note executed by the debtor as maker and on the accommodation notes discussed above. As to the latter, we disallow all interest since we have already held that those notes were discharged.

The Referee has held that interest should not be allowed on the debtor's note account after the time that the debtor filed his wage earner plan but before his discharge. The general rule in bankruptcy cases is that interest stops running from the date of the filing of a petition in bankruptcy. City of New York v. Saper, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710 (1949). KEMBA contends, however, that the nature of a wage earner proceeding is different from that of an ordinary bankruptcy proceeding and that the reasons for the rule regarding post-filing interest in bankruptcy are not necessarily present in a wage earner proceeding. KEMBA asserts, moreover, that this "general rule" of bankruptcy practice is actually an exception, applicable only to *ordinary* bankruptcy proceedings, since ordinarily interest accrues on a debt until the debt is paid. In support of this position the creditor cites Collier on Bankruptcy, § 63.16 (14th Ed.) as follows:

"The principle that interest stops running from the date of the filing of the petition in bankruptcy should be understood as a rule of liquidation practice rather than as a rule of substantive law. The overwhelming majority of bankruptcy cases end with the distribution of a dividend that is far from satisfying the creditors even as to the principal. Disputes over interest thereby become largely academic. But it would not be accurate to allow this quantitative element to create a confusion as to what is the rule and what the exception. In liquidating interest-bearing claims, the computation of interest must be made as of some fixed date. The law selects as decisive the date of the filing of the petition in bankruptcy. It disregards, for the purposes of liquidation, interest accruing beyond that date. Yet this is primarily a technical device to cope in the most convenient and equitable manner with the debtor's apparent insolvency. True, most cases of bankruptcy liquidation are, as it were, ripe for the surgical operation saving the patient's life by amputating his debts. As to such cases the denial of interest accrued after the filing date, in its origin more a provisional method of calculation, becomes the final words. But in some cases the estate is sufficient to take care of the interest accrued after the filing date, and in this situation the debtor will not be handed over the residue without previous distribution to the creditors of such after-accrued interest up to the day of payment." [footnote omitted]

"Though numerically undoubtedly a negligible minority, these cases of ultimate solvency reflect what is truly the rule rather than the exception, namely that a debtor should pay interest up to the day of payment, a rule whose operation is merely suspended where a debtor is so hopelessly insol-

vent that he is unable to pay even the provable part of a claim, namely principal and interest accrued prior to bankruptcy."

"To remember this relationship of rule and exception . . however much it appears to be contradicted by what seems to be, in terms of mere number, the rule and the exception . . is of more than purely theoretical importance."

█ It is generally recognized that interest may be allowed even in ordinary bankruptcy or insolvency situations where (1) the estate of the debtor is sufficient to pay all his debts including interest, (2) the security in the bankrupt's estate produces income, or (3) the security is sufficient when sold to pay both principal and post-petition interest.[1] See In re Mighell, 168 F.Supp. 811 (D.Kan.1958) aff'd 273 F.2d 682 (10th Cir. 1959). These exceptions to the "no interest" rule serve as a reminder that the law favors the allowance of interest up to the time of payment except in such circumstances as are presented by the normal bankruptcy condition where the estate is insufficient to meet even the face amount of the bankrupt's debts.

█ The object of a wage earner plan, on the other hand, is to permit the debtor to relieve himself of the onus of his financial responsibilities by extending the time over which he pays his debts, thus allowing him to pay fully his debts and obligations on an extended basis without harassment. Thus, a Chapter XIII proceeding is not in some aspects a moratorium for debtors; it is amortization.[2] It contemplates complete discharge of an obligation over a period of time. In discussing Chapter X proceedings Collier states that:

> In the case where the proposed plan calls for payment to the creditors of 100% of their claims . . . then certainly post-petition interest should be allowed on all claims. . . . Collier on Bankruptcy, § 9.08 (14th Ed.).

It would seem that this rule might also be applicable to wage earner's proceedings. The addition of interest to which a creditor is legally entitled on the debts of the wage earner would bring about a payment in full, unless it would be so unduly burdensome on the debtor that he would be induced to file "straight" bankruptcy proceedings which would then ordinarily prevent the creditor from recovering any substantial amount.

█ While the creditor, KEMBA, may be entitled to interest on the unpaid balance of the debtor's note account with KEMBA up to the time of the filing of the wage earner plan, we are persuaded that for policy reasons, no interest should be allowed after the filing date.[3]

It is therefore Ordered, Adjudged and Decreed that the October 17, 1972 Order of the Referee in Bankruptcy be affirmed insofar as it discharges those claims of KEMBA as to the notes on which Carpenter was accommodation co-maker and insofar as the Referee ruled that he was entitled to be reimbursed for $195.00 improperly deducted from his salary by the said creditor. The debtor is also entitled to the permanent injunction granted by the Referee against the said creditor prohibiting the withholding of any future sums from the debtor's salary or from employing any process to collect this debt.

1. See In re Leeds Homes, Inc., 222 F.Supp. 20 (E.D.Tenn.1963), aff'd 332 F.2d 648 (6th Cir. 1964), cert. denied Tate v. National Acceptance Co., 379 U.S. 836, 85 S.Ct. 71, 13 L.Ed.2d 43 (1964), where Judge Frank Wilson held that the allowance of interest to secured creditors under this exception was a matter within the discretion of the court considering the equities involved.

2. Chandler, The Wage Earners' Plan: Its Purpose, 15 Vand.L.Rev. 169 (1962).

3. We also note difficulty of the bankruptcy court's being required to calculate correct interest at a lawful rate if our ruling were otherwise.

The Referee's Order is also affirmed insofar as it denies any interest on the debtor's note account to KEMBA after the date of filing the bankruptcy proceedings.

Costs of the cause are assessed against KEMBA.