**In re: SHAFFER FURNITURE COMPANY, Debtor.**

**Bankruptcy No. 86–01526T.**

United States Bankruptcy Court, E.D. Pennsylvania.

Jan. 8, 1987.

**828**

Eugene C. LaManna, Reading, Pa., for debtor.

Kenneth F. Carobus, Phila., Pa., for Unsecured Creditors.

David C. Schattenstein, Allentown, Pa., Examiner.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The posture of this case presents to us one rather simple legal issue: whether unsecured creditors of a solvent Debtor involved in a liquidating Chapter 11 case are entitled to payment of post-petition interest on their claims. We hold that the creditors are indeed entitled to post-interest, especially due to the course of conduct of the Debtor here, which does not suggest any equities in its favor, and that, therefore, distribution of proceeds must be accomplished accordingly. Our role as a visiting judge in our Court's Reading Station due to the temporary disability of Chief Judge Thomas M. Twardowski causes us to take no action except to decide the rather simple issue put before us, although we do note that, according to an Examiner's Report, numerous improprieties may have taken place in the course of this proceeding which may constitute a bar to confirmation of any Plan. However, the ultimate resolution of this case must be made by Judge Twardowski, into whose hands this case will be returned for ultimate disposition.

This Chapter 11 proceeding was filed in our Court and assigned to our Reading Station. In July, 1986, a creditor, Bassett Furniture Industries, Inc., moved for the appointment of an Examiner, and David C. Schattenstein, Esquire, was accordingly appointed as Examiner by agreement of all parties, including the Debtor.

On November 7, 1986, the Examiner filed a Report which recites developments which both trouble us and which partially explain the unusual posture of this case. In February, 1986, prior to the bankruptcy filing, the Debtor engaged Gene Rosenberg Associates of Hartford, Connecticut, to conduct a "bankruptcy sale" of the Debtor's inventory. The subsequent sale was then widely advertised in the Reading area news media and conducted both before *and after* the filing of the Petition in this case without even an attempt to obtain court approval or even notification of same, which appears to have been conduct clearly in violation of 11 U.S.C. § 363(b).

Further, according to the Examiner, the Debtor, by its Counsel and apparently both before *and after* the filing, solicited creditors to accept a fifty (50%) percent payment "plan," and disbursed certain payments to creditors in accordance therewith. This conduct appears to have been deceptive, as well as clearly violative of 11 U.S.C. § 1125(b), because the Debtor, as is indicated below, had sufficient assets to pay all creditors in full. According to the Examiner's Report, the Debtor also failed to list certain trucking companies as creditors on its schedules, and continued to make payments to them. In addition, it failed to list Hamilton Bank as a creditor on its schedules, although the Bank was a secured creditor and the *largest* of the Debtor's

creditors. Upon the intervention of the Examiner, the Bank was paid in full, in a sum including post-petition interest.

Finally, at the conclusion of the "bankruptcy sale," again *subsequent* to the bankruptcy filing, the Debtor, again *without* court approval, compounded its previous violations of 11 U.S.C. § 363(b) by hiring an auctioneer to liquidate all of its remaining assets.

On July 23, 1986, apparently at the conclusion of all of the foregoing activities, the Debtor filed a proposed Disclosure Statement and Plan. Without noting any of the irregularities alleged by the Examiner in his Report, the one and one half page Disclosure Statement stated that the Debtor had available cash resources of $214,420.92 and remaining unsecured debts totalling about $71,806.99. The Debtor was therefore solvent and proposed to pay all creditors in full.

On November 7, 1986, Counsel for the unsecured creditors, Counsel for the Debtor, and the Examiner appeared before us while we were sitting for Chief Judge Twardowski in Reading. Having had no opportunity to review the Examiner's Report, which was not filed until that very day, the Court welcomed the representation of all counsel present that the only issue to be resolved was whether the unsecured creditors were entitled to post-petition interest on their claims before the remaining cash reserves were distributed to the Debtor's principals. Despite the revelations contained in his Report, the Examiner did not see fit to bring same to the attention of the Court, apparently on the belief that no harm was done to the creditors by the Debtor's conduct and that further action could be taken against the Debtor and other participants in the improprieties, such as the auctioneer, Gene Rosenberg Associates, and the Debtor's Counsel, after the meeting, per 11 U.S.C. § 341, which apparently had not yet been conducted. The Examiner therefore presented to the Court, at this juncture, a proposed Order denying Approval of the Debtor's presently-submitted Disclosure Statement, but allowing the Debtor to file a subsequent amended Disclosure Statement, upon consent of the Examiner, without further notice and hearing, after the disposition of the issue of whether the unsecured creditors were entitled to post-petition interest. With the agreement of all present, the Court executed the Order and further ordered that the parties simultaneously file Briefs addressing the issue of whether the unsecured creditors were entitled to post-petition interest on their claims on or before November 21, 1986.

As we indicated at the outset, this issue is rather easily resolved on the present record. We do observe that the Code speaks directly to the issue of allowance of post-petition interest in Chapter 7 cases, at 11 U.S.C. §§ 726(a)(5) and (a)(6), which provide a *fifth* priority of distribution to "interest at the legal rate from the date of filing of the petition" on all creditors' claims and a *sixth* priority of distribution to the Debtor. Therefore, the Code expressly grants unsecured creditors a right to post-petition interest in Chapter 7 cases. There are, however, no provisions comparable to 11 U.S.C. §§ 726(a)(5) and (a)(6) in Chapter 11, although we believe that there are numerous guideposts and unanimity among the precedents that exist which establish that the distribution priorities in Chapter 11 cases should be the same as that expressly established by §§ 726(a)(5) and (a)(6) in Chapter 7 cases.

One guidepost is 11 U.S.C. § 1129(a)(7), which states that "each impaired class of claims or interests ... will receive ... on account of such claim property of value, as of the effective date of the plan, [an amount] that is not less than the amount that ... would [be received] ... if the debtor were liquidated under Chapter 7 of this title on such date; ..." Although this statutory provision might be read as expressly setting forth the same rules for distribution in Chapter 11 cases that apply in chapter 7 cases, it does not appear that this provision is more than a guidepost because the unsecured creditors here, who will be paid in full, are not impaired. 11 U.S.C. § 1124(3)(A).

Another guidepost is 11 U.S.C. § 1141, which provides that the limitations on the Debtor's right to a discharge and dischargeability of certain obligations is the same in a Chapter 11 case as in a Chapter 7 case. See 11 U.S.C. §§ 1141(d)(2), 1141(d)(3)(C).

However, even more convincing are the precedents, under various chapters of the Bankruptcy Act and the Code, which hold that, based upon general equitable principles, post-petition interest ought to be paid to the creditors of solvent debtors before proceeds of liquidation are returned to the debtor.

Most pertinent are those cases decided under Chapter 11, which include *In re San Joaquin Estates*, 64 B.R. 534, 536 (9th Cir. BAP 1986) (relying on parallel between § 726(a)(5) and § 1129(a)(7)); *In re Manville Forest Products Corp.*, 43 B.R. 293, 199 (Bankr.S.D.N.Y.1984) (relying on "equitable principles"); and *In re Oahu Cabinets, Ltd.*, 12 B.R. 160, 163 (Bankr.D.Hawaii 1981) (relying on commentary of Collier on what is analyzed to be the comparable Chapter X of the Act). There are several cases decided under the Act which state that the instance "where the bankrupt ultimately proves solvent" is one of the exceptions against the principle that accrual of post-petition interest is prohibited, as is set forth in *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 165, 67 S.Ct. 237, 241, 91 L.Ed. 162 (1946). *See, e.g., In re Beverly Hills Bancorp*, 752 F.2d 1334, 1339 (9th Cir.1984); *In re Boston & Maine Corp.*, 719 F.2d 493, 496 (1st Cir.1983); *In re Walsh Constr., Inc.*, 669 F.2d 1325, 1330 (9th Cir.1982); *In re New York, N.H. & H. R.R.*, 4 B.R. 758, 798 (D.Conn.1980); and *In re Carpenter*, 363 F.Supp. 218, 222 (W.D.Tenn.1973). As the *Beverly Hills* court states "the award of post-petition interest is dependent upon the equities of the case." 752 F.2d at 1339.

The Debtor cites two (2) authorities which it alleges hold to the contrary, *In re Forest Hills Assoc.*, 40 B.R. 410 (Bankr.S.D.N.Y.1984); and *In re Carr*, 32 B.R. 343 (Bankr.N.D.Ga.1983). In fact, neither of these cases are in point, as they relate to interest claims by *secured* creditors against

*insolvent* debtors. The fact that *Forest Hills* was decided by the same bankruptcy judge who decided *Manville Forest* shortly thereafter is indicative of the lack of similarity of the issue in *Forest Hills* to that at issue here. While we agree with the result in *Carr, see In re Small*, 65 B.R. 686 (Bankr.E.D.Pa.1986), we do not feel that disallowance of interest on mortgage arrearages to secured mortgage holders, the issue in *Carr* and *Small*, has any bearing on the issue here.

■ While we recognize that the Debtor's solvency permits, as opposed to requires, us to prioritize the unsecured creditors' claims for post-petition interest over the return of the available cash reserves to the Debtor, depending upon the "equities of the case," we are not inclined to hold in favor of the Debtor here, on the basis of equitable principles. It appears that the Debtor here may have merely used the bankruptcy process as an advertising gambit to more quickly and lucratively go out of business. While a debtor's motivations for filing bankruptcy are not generally a concern of the court, adherence to the requirements set forth in the Bankruptcy Code always is. As indicated above, the Debtor and his agents have proceeded in this matter as they wished, almost as if Bankruptcy Code restrictions were non-existent. We do not think that the pragmatic assertion that "all's well that ends well" should cause us to simply overlook, as mere technicalities, the breach of the most fundamental duties upon a debtor involved in a Chapter 11 case which the Examiner suggests may have occurred here. In any event, while we are leaving the future of the case in the hands of Chief Judge Twardowski, we are constrained to conclude that we find the equities of the Debtor in this matter to be close to nil. The only admirable features of its conduct were actually filing bankruptcy, an act which, given its pre-bankruptcy "bankruptcy sale," was itself in doubt, and its lack of resistance to and apparent cooperation with the Examiner. However, clearly this conduct and the end result of payment of all creditors in full does not make everything that has

gone before "all right." Suffice it to say that, in deciding this matter on the equities of the case, we have no hesitancy in concluding that the unsecured creditors are entitled to post-petition interest on their claims, and we will so order.

 None of the Briefs address the issue of what law should control the determination of the rate of interest and, accordingly, what the rate of interest at which the creditors' post-petition interest should be calculated. We believe that, in this area, we are "governed by state law, absent an overruling federal law." *Debentureholders Protective Comm. v. Continental Inv. Corp.*, 679 F.2d 264, 268 (2d Cir.1982), *cert. denied sub nom. Glen Corp. v. O.C. Associates*, 459 U.S. 894, 103 S.Ct. 192, 74 L.Ed.2d 155 (1982). The statutory rate of interest in Pennsylvania, the law of which state apparently governs here, is six (6%) percent. 41 P.S. § 202. The creditors are therefore entitled to post-petition interest on their claims at the rate of six (6%) percent per annum.

We must conclude with two (2) comments regarding the future of this case. First, since no classes of claimants are impaired by the Debtor's Plan, no disclosure statement is required. *See* 11 U.S.C. § 1126(f). Hence, it is not necessary that the Debtor file an "amended disclosure statement" to obtain confirmation of its Plan, as we contemplated in our Order of November 7, 1986.

Secondly, however, this appears to be the rare case where a serious question has arisen as to whether the requirements of 11 U.S.C. §§ 1129(a) and (a)(3), which mandate that the proponent of the Plan has complied with the applicable provisions of this title and where the question of whether the Plan has been proposed in good faith and was not by any means forbidden by law, are obstacles to confirmation. The apparent use of this bankruptcy proceeding as an advertising tactic and the complete failure to adhere to the most fundamental requirements of the Code raise questions as to whether the requirements of §§ 1129(a)(2) or (a)(3) can be met, and whether any Plan can be confirmed.

We shall therefore enter an Order requiring the Debtor to pay post-petition interest at six (6%) percent per annum to all of the creditors, which we believe to be a totally just result, without conditioning such a directive upon the preparation and confirmation of a Plan, since there is a possibility that, for reasons unconnected with the distribution process, confirmation of any Plan of the Debtor may be denied.

An Order consistent with this Opinion will accordingly be entered.