## In re DAVID GREEN PROPERTY MANAGEMENT d/b/a Cash Country Theatre, Debtor.

### Bankruptcy No. 92–60782.

United States Bankruptcy Court, W.D. Missouri.

Feb. 17, 1994.

Danny R. Nelson, Springfield, MO, for trustee.

Ronald S. Weiss, Kansas City, MO, for debtor.

### MEMORANDUM OPINION AND ORDER GRANTING TRUSTEE'S APPLICATION FOR APPROVAL OF FINAL DISTRIBUTION TO UNSECURED CREDITORS

KAREN M. SEE, Bankruptcy Judge.

On February 8, 1994, a hearing was held on the Trustee's Application for Approval of Proposed Final Distribution to Unsecured Creditors and the objection of Debtor David Green Property Management.[1] Trustee Danny Nelson represented himself. Debtor appeared by counsel Ronald Weiss. The facts are undisputed. After consideration of stipulated evidence, the file, briefs, arguments and authorities, the court finds the Application should be granted.

This case presents circumstances not often found in a bankruptcy proceeding: there were sufficient proceeds from the sale of property to pay all allowed claims of creditors, and a surplus will remain of over $1,100,000 cash, plus at least $2,664,000 in real and personal property, for a total of $3,764,000 in cash and property to be returned to debtor. Debtor will also receive $5,100,000 in unused tax loss carryforwards.[2]

---

1. Property was titled in the name of David and Eileen Green, husband and wife, and not in the name of a partnership or individuals identified as partners. Earlier in the case, questions were raised as to whether the debtor entity was a partnership or David Green individually. However, as the case progressed and creditors were

paid, the issue became dormant and the case has proceeded under the assumption that debtor is a partnership consisting of the husband and wife. Property titled in the Greens' names in other states was not included in the bankruptcy.

2. Property to be returned includes real estate leased on a long-term lease, valued by debtor at

The issue is whether, in a case with a confirmed liquidating Chapter 11 plan, where there is a surplus of funds and property after all claims have been paid in full, the entire surplus should be returned to debtor, or whether the general unsecured claims should receive interest as, by analogy, would occur in a Chapter 7 case pursuant to 11 U.S.C. § 726(a)(5).

## FACTS

In 1991, Debtor began constructing a theater complex in Branson, Missouri, a rapidly developing center for the country music tourism industry. Debtor had performance and licensing contracts with the well-known entertainer Johnny Cash, and the theater was to be named Cash Country. The project ran into financial problems and contractors ceased work, leaving a partially completed theater.

Creditors filed an involuntary Chapter 7 petition on May 27, 1992. After the involuntary petition was filed and before an order for relief was entered, Debtor attempted without success to obtain additional partners to infuse cash in order to allow Debtor to retain an equity interest in the project and satisfy creditors' claims.

The trial on the involuntary petition was set for August 14, 1992. At the hearing, Debtor consented to an order for relief and converted the case to Chapter 11 as a matter of right under § 706. Also pending was the petitioning creditors' motion to reconvert the case to Chapter 7 or appoint a Chapter 11 trustee due to Debtor's alleged fraud and mismanagement. When Debtor converted to Chapter 11 Debtor also agreed to appointment of a Chapter 11 Trustee; Mr. Nelson was appointed Trustee the same day. Debtor later filed a liquidating plan which was confirmed on July 20, 1993. The plan provid-

ed for the Trustee to remain in place as a liquidating and disbursing agent. Thus, there has never been a debtor-in-possession during the Chapter 11 proceedings.

When the case was commenced, it did not appear creditors would be paid in full. However, due to the Trustee's exemplary and prompt work and escalating real estate prices in Branson, the Trustee liquidated the theater and some other properties rapidly. All sales of property were effectuated before Debtor's Plan was confirmed.

After the theater complex and surrounding property were sold in November, 1992, it was realized that creditors could be paid in full. By early 1993, before Debtor filed a plan, the Trustee paid all secured claims with interest and all unsecured ticketholder claims.[3] All filed administrative and priority claims, and the full principal amounts of all general unsecured claims have also now been paid. After payment of every claim there will be a surplus of at least $1,100,000 cash and $2,664,000 in property, for a total surplus of $3,764,000, plus unused tax loss carryforwards of $5,100,000.

Debtor proposed two plans in this case. The second plan was confirmed. In early Spring, 1993, after the trustee had generated enough funds to pay all creditors in full, Debtor filed the first plan, which was a reorganization rather than a liquidating plan. Rather than paying creditors with funds on hand, it provided for Debtor and partner David Green to use estate funds to enter into real estate development deals which would pay creditors on a speculative basis over a period of many years. The first plan was not approved.

The subsequent liquidating plan, offered by Debtor as a prompt alternative to conversion to Chapter 7, was the one approved by

---

$2,000,000; a residence (not the Greens' primary residence) valued by debtor at $175,000; the "Dustin tract" with a value of at least $375,000 (based on bids during the bankruptcy case); and various causes of action, valued at a minimum of $114,000.

3. On the Trustee's motion, ticket claims were paid separately in order to reduce administrative expenses. There were 5,000 claims for small amounts, generally between $25 and $100, so

once it was determined there would be sufficient money in the estate, it was less expensive to pay the claims than to maintain the notice list. The request to pay interest on unsecured claims does not extend to the ticketholder class. Those claims were paid early in the case, so interest on each claim would be minimal and would be less than the expense of processing and mailing the checks.

creditors and confirmed on July 20, 1993. Debtor's Plan was actually superfluous and in fact contains provisions which appear calculated to serve only the interests of Debtor and not of the creditors. The Trustee sold the property which generated the funds to pay creditors before the Plan was confirmed. The Plan did not grant the creditors any benefit above what they would have expected in Chapter 7 because the Trustee had done all the work before the Plan was confirmed, secured creditors and unsecured ticketholders were paid in full before the Plan was proposed, there were enough funds to pay the anticipated total of unsecured claims, and only one significant creditor issue—with the IRS—was unresolved.

However, the Plan benefitted Debtor in several respects. It provided a vehicle by which David Green attempted to assume an alleged contract on a piece of property known as the Crawford property in order to obtain it for his own benefit for anticipated development after conclusion of the bankruptcy proceeding. It also allowed debtor to seek payment from the estate of legal fees as administrative expenses for work on plans which benefitted David Green and not the creditors. Such fees included work on both the first plan which provided for a speculative development over several years, which was not approved, and on the confirmed Plan, which provides for return of property to Debtor and the proposed assumption of the Crawford contract for Debtor's benefit. It is likely that in a Chapter 7 proceeding, where there would be no confirmed plan, similar fees would not have been allowed to be paid from the estate because they benefitted only Debtor and David Green and not the creditors and estate. Thus, David Green would have had to pay such expenses up front out of his own resources even though a surplus would have been returned to him eventually.

On January 3, 1994, the Trustee filed his Application for Approval of Proposed Final Distribution to Unsecured Creditors. The Application was amended on January 5, 1994. The Application sought approval to pay the balance of the unsecured claims together with interest on such claims at the federal legal rate from the date the petition was filed, May 27, 1992, to the proposed date of final distribution, January 31, 1994.

At the hearing on the Application to Approve Final Distribution, the Trustee reported the estate had received gross receipts of $7,857,140 and made total distributions in payment of administrative expenses, priority claims, secured claims and unsecured claims through January 31, 1994 totalling $6,474,-856, leaving a cash balance of $1,382,284 as of the hearing date.

Debtor objected to payment of interest on unsecured claims. The Trustee and Debtor agreed the principal balances of filed and allowed unsecured claims could be paid on January 31, 1994, with the interest issue to be heard on February 8, 1994. The Trustee proposes to pay $206,698.05 in interest to unsecured creditors, and after payment of remaining administrative expenses, to return to Debtor the surplus, estimated at over $900,000 cash, plus $2,664,000 in property and $5,100,000 in unused tax loss carryforwards.

### ISSUE AND BACKGROUND

■ The issue is whether, under the circumstances of this case, the Bankruptcy Code permits payment of post-petition interest on filed and allowed unsecured claims under a liquidating Chapter 11 plan, or whether the Bankruptcy Code or Debtor's confirmed plan prohibit payment of such interest. The court finds that payment of interest on unsecured claims out of the surplus is not prohibited by any provision of the Bankruptcy Code or the Plan, and to the contrary, payment of interest is permitted by the Code, case law and the Plan. The Trustee's Application, including payment of post-petition interest on unsecured claims, is approved for the following reasons.

■ The general rule is that creditors cannot recover post-petition interest in a bankruptcy proceeding. 11 U.S.C. § 502(b)(2); *Matter of Fesco Plastics Corp., Inc.*, 996 F.2d 152, 155 (7th Cir.1993). However, there are two major exceptions to the general rule. First, oversecured creditors receive post-petition interest on their claims. 11 U.S.C.

§ 506(b); *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 246, 109 S.Ct. 1026, 1033, 103 L.Ed.2d 290 (1989). Second, post-petition interest on unsecured claims is payable in Chapter 7 cases where the bankruptcy estate produces a surplus. 11 U.S.C. § 726(a)(5); *Fesco,* 996 F.2d at 155–56.

Chapter 7 contains an express provision for payment of interest on unsecured claims in the event of a surplus but Chapter 11 does not. If this case had not been converted to Chapter 11 and had proceeded under Chapter 7 as originally filed, unsecured creditors would be entitled to post-petition interest under § 726(a)(5). Debtor concedes this in its brief, but correctly notes that pursuant to § 103, § 726 does not apply in Chapter 11. In fact, Chapter 11 does not address in any fashion the issue of payment of post-petition interest on claims. Nothing in the Bankruptcy Code prohibits payment of post-petition interest in Chapter 11. *Matter of Johns–Manville Corp.,* 68 B.R. 618, 637 (Bankr.S.D.N.Y.1986).

### INTEREST NOT PROHIBITED BY THE PLAN

■ Debtor argues in its brief that the Plan and Confirmation Order have the effect of a judgment and must be enforced even if the Plan contains provisions contrary to law. Such assertion is not pertinent because there are no plan provisions at issue which are contrary to law or which prohibit payment of interest before the surplus is returned to Debtor. However, the argument is notable because a judgment accrues interest. Debtor's analogy supports the conclusion that in this situation, where there is a surplus, the "judgment" in favor of unsecured creditors should accrue interest.

The court rejects Debtor's assertion that the First Amended Plan, confirmed on July 20, 1993, prohibits payment of post-petition interest on unsecured claims. The only provision which Debtor cites merely defines what constitutes an unsecured claim, but does not govern terms of payment. No other provision in the Plan concerning payment prohibits interest in the event of a surplus, and in fact, other provisions support payment of interest.

Section I of the Plan defines terms used in the Plan. Debtor asserts that interest is prohibited under Section I, Paragraph 1.07, which defines "allowed unsecured claim" as follows:

**1.07 ALLOWED UNSECURED CLAIM** shall mean an Allowed Claim for which the Claimant has not asserted or is determined by a Final Order not to hold a valid, perfected and enforceable lien, security interest or other interest in or encumbrance against the property of the Debtor or right to set-off to secure the payment of such Claim. *In no case shall this term include interest accrued from and after the Filing Date.* (emphasis added).

Section 1.07 of the Plan is merely what it purports to be—a definition. It correctly states the definition of an unsecured claim, and correctly states that the face amount of an allowed unsecured claim does not include post-petition interest. However, the definition section of the plan does not dictate the treatment or payment of claims.

Debtor's argument confuses the defined amount of the claim and the amount of payment on the claim. Section 1.07 addresses only the amount of the claim, not the amount of payment on the claim. The definition of the amount of a claim is not the same as the amount to be paid on that claim. Rather, the amount to be paid pro rata among all claimants in a class means claimants may receive less or more than the face amount of the claim as defined in Section 1.07. For example, if there was a 50% distribution to unsecured claims, a claim allowed in the amount of $100 would receive only $50 in payment, but the definition of the allowed amount would not change to $50; it would remain allowed in the amount of $100. Likewise, in this case with a surplus after a 100% distribution, a claim allowed in the amount of $100 would receive a distribution of $100 plus interest. However, the allowed face amount of the claim remains $100, as defined in Section 1.07 of the Plan.

■ The payment provisions are in Section V, "Treatment of Claims and Interest", which provides, in regard to Allowed Unsecured Claims:

5.5.2 In addition to the initial payment, the Allowed Class 5 claims shall receive *payment in full as ordered by the Court.* (emphasis added).

At the hearing, the Trustee explained, without objection or disagreement from Debtor, that Paragraph 5.5.2 was inserted in the Plan at the Trustee's request in anticipation of the very situation now at issue. The Trustee's explanation is logical because by the time the Plan was filed enough property had been sold to pay the creditors, so the Trustee would have anticipated the possibility of paying interest. In addition, Section VIII, "Retention of Jurisdiction", provides for the court's continuing jurisdiction and contains the following relevant provision:

8.1 To classify, allow or disallow claims and direct distributions of funds under the Plan and to adjudicate all controversies concerning classification or allowance of any claim or interest.

Sections V and VIII of the Plan expressly grant the court authority and discretion to determine the allowance and payment of claims and to direct distribution under the Plan.

In conclusion, there is no Plan provision which prohibits payment of interest in the event of a surplus. Based on the Trustee's undisputed statement, one of the specific reasons for Paragraph 5.5.2 was to permit payment of interest in the event of a surplus. At the least, two provisions give the court discretion to allow payment of interest.

### INTEREST WITHIN COURT DISCRETION

■ Independent of any Plan provisions which support payment of interest out of the surplus, payment of post-petition interest on unsecured claims is a matter within the court's discretion and depends on the equities of the case. *San Joaquin Estates, Inc.,* 64 B.R. 534, 536 (9th Cir. BAP1986); *Matter of Walsh Construction, Inc.,* 669 F.2d 1325, 1330 (9th Cir.1982); *In re Shaffer Furniture Co.,* 68 B.R. 827 (Bankr.E.D.Pa.1987); *In re Manville Forest Products Corp.,* 43 B.R. 293, 299–300 (Bankr.S.D.N.Y.1984). These cases provide that post-petition interest is allowable on unsecured claims in Chapter 11 cases where the estate is solvent and a surplus remains after payment of the principal balances of all claims. In fact, it is an abuse of discretion not to award post-petition interest in a Chapter 11 case where there is a "very solvent debtor." *In re San Joaquin Estates, Inc.,* 64 B.R. at 536.

The court rejects Debtor's contention that *Fesco, supra,* limits the discretion to award post-petition interest in this case. In *Fesco,* certain unsecured creditors sought post-petition interest on claims which were paid five years later than other unsecured claims in a Chapter 7 case that had been converted from Chapter 11. The Debtor's estate was insolvent. The Seventh Circuit held that under those circumstances the Bankruptcy Court could not exercise equitable powers under 11 U.S.C. § 105(a) to award post-petition interest to the unsecured creditors. This court agrees that post-petition interest to unsecured creditors under those circumstances would be unwarranted by the Code or other authority.

However, the Seventh Circuit in *Fesco* recognized that creditors may recover post-petition interest on prepetition claims when the debtor turns out to be solvent. 996 F.2d at 155–56. In the present case, Debtor is very solvent, and there is a surplus of $1,382,284 cash, which will be reduced to over $1,100,-000 after payment of administrative expenses, plus $2,664,000 in property. From this amount, the Trustee estimated there would be a refund to Debtor of $900,000 cash plus all the $2,664,000 in property and the $5,100,000 in tax loss carryforwards after payment interest on unsecured claims.

The language in Section 5.5.2 of Debtor's Plan is broad enough to allow payment of post-petition interest, and the Trustee had that provision inserted in order to cover this situation. However, even if that provision had not been in the Plan, persuasive authority holds that it is appropriate to pay post-petition interest under the circumstances of this case. *In re San Joaquin Estates, Inc., supra; Matter of Walsh Construction, Inc., supra; In re Shaffer Furniture Co., supra; In re Manville Forest Products Corp., supra.*

The decision by the Bankruptcy Appellant Panel in *In re San Joaquin Estates, Inc.,* involving a solvent debtor and a surplus after all claims were paid in full, is on point. The Court concluded that failure to award interest in such a case would be an abuse of discretion. 64 B.R. at 536. In the Eighth Circuit, supportive dicta is found *United States v. Kalishman,* 346 F.2d 514, 517–18 (8th Cir.1965), which states:

> This is not to say that post-bankruptcy interest may never be allowed, for it is settled that the creditors' rights thereto will be recognized should the estate subsequently prove to be solvent.…

The cases allowing post-petition interest to unsecured creditors in a Chapter 11 case provide that exercise of the court's discretion depends on the equities of the case. Here, the equities favor payment of post-petition interest. First, claims secured by mechanics' liens were previously paid in full with interest. Second, this case was originally commenced as a Chapter 7 proceeding and had it not been converted to Chapter 11, Debtor concedes unsecured creditors would be entitled to post-petition interest pursuant to § 726(a)(5). The case was converted to Chapter 11 at Debtor's request, but the case then proceeded as a liquidating Chapter 11 under the supervision of a Chapter 11 Trustee.

In maintaining the case in Chapter 11 and proposing the Plan, Debtor has acted in David Green's own self-interest and not for the best interests of creditors. Mr. Green has proposed two different plans. Both were filed after it was apparent the Trustee had generated enough funds to pay creditors in full. His first plan proposed entering into a development deal which would allow him to use estate funds to develop real estate projects and pay creditors on a speculative basis over a period of years rather than pay creditors immediately with funds already on hand.

That plan was not approved. Mr. Green wishes to remain involved in development in Branson. With the current Plan, Debtor hoped that some property would be returned to Mr. Green, and that he could compel turnover to the estate of another piece of property, the Crawford tract, by means of a proceeding to compel assumption of an alleged contract.[4]

Even if interest is paid on unsecured claims, Debtor will receive a substantial windfall in the return of $3,500,000 in cash and property plus $5,100,000 in tax loss carryforwards. It would be inequitable under these circumstances to allow Debtor to avoid the payment of post-petition interest to unsecured creditors. It would be an unwarranted and undeserved windfall to Debtor to receive a refund of $3,764,000, if post-petition interest is disallowed, when the unsecured creditors have suffered delay in payment of their claims during these Chapter 11 proceedings, the $206,000 in proposed interest is only 5.5% of the surplus, and unsecured creditors would have received payment in full plus interest pursuant to § 726(a)(5) if this case had not been converted from Chapter 7 to Chapter 11. In fact, with the clarity of hindsight, it appears creditors would have been paid principal and interest at an earlier date under Chapter 7 because there would have been no delay for the submission of Debtor's two plans, and there would have been fewer administrative expenses, including attorney fees incurred by Debtor's counsel, if the Chapter 11 case and Debtor's confirmed Plan had not proceeded.

The equities also favor exercising discretion to pay post-petition interest on unsecured claims because it would be consistent with the purposes of Chapter 11 and Debtor's Plan. A requirement for confirmation of a plan is that creditors receive under the plan property of a value that is not less than

---

4. The Crawford tract is an example of placing Debtor's interests ahead of the creditors' interests. Before the bankruptcy proceeding, Mr. Green had once had a contract to purchase the Crawford tract, but he had been unable to perform. Before Debtor's Plan was filed, it appeared creditors would receive a 100% distribution. In the Plan, Mr. Green moved to assume the alleged contract for purchase of the Crawford tract. Mr. Green attempted to assume the contract in order to keep and develop the tract for himself after conclusion of the bankruptcy proceedings and not in order to liquidate it for the benefit of creditors. If the contract had been assumed it would have diverted estate funds from immediate payment to creditors, thus delaying distribution. The assumption would have benefitted only Mr. Green and not the estate.

the amount that such creditor would receive if Debtor was liquidated under Chapter 7 of the Bankruptcy Code. 11 U.S.C. § 1129(a)(7)(A)(ii); *San Joaquin Estates,* 64 B.R. at 536. In order for unsecured creditors to be paid as much in this liquidating Chapter 11 proceeding as they would be paid under § 726(a)(5), post-petition interest on allowed unsecured claims should be permitted under Debtor's confirmed Plan. The Plan should be interpreted in a manner that is consistent with provisions of § 1129, so provisions which give the court discretion to allow or disallow claims and to direct distribution of funds should be interpreted in a manner consistent with § 1129(a)(7)(A)(ii).

### *CALCULATION OF INTEREST*

▮ The parties stipulated that if post-petition interest to unsecured creditors is payable, it should be the federal legal rate from the date of the petition to the date of final payment. Federal statutes, rather than state statutes, determine the legal rate of interest to which creditors are entitled when there is a surplus. *In re Godsey,* 134 B.R. 865 (Bankr.M.D.Tenn.1991). The legal rate, to be paid holders of allowed unsecured claims before any proceeds are returned to Debtor, means the federal judgment rate under 28 U.S.C. § 1961. *Id.; In re Laymon,* 117 B.R. 856 (Bankr.W.D.Tex.1990). Post-petition interest is payable from the petition date to the date of payment. *In re Laymon,* 117 B.R. at 862.

Interest shall be calculated at a rate equal to the coupon issue yield equivalent of the average accepted auction price for the last auction of 52 week United States Treasury Bills as of the petition date, May 27, 1992. 28 U.S.C. § 1961; *In re Godsey,* 134 B.R. at 867; *In re Laymon,* 117 B.R. at 862–63. Thus, the federal legal rate of interest applicable in this case is 4.2% (see Trustee's Exhibit D).

### *CONCLUSION*

Payment of post-petition interest on unsecured claims in Chapter 11 cases where there is a surplus is not prohibited by the Bankruptcy Code, and Debtor's Plan in this case does not prohibit payment of interest on unsecured claims. In this case with a liquidating Chapter 11 plan, where surplus cash and property of $3,764,000 and tax loss carryforwards of $5,100,000 will be returned to Debtor after all claims have been paid in full, it is within the court's discretion, based on the equities of the case, to allow payment of post-petition interest on unsecured claims.

Accordingly, it is hereby **ORDERED**:

1. The Trustee's Application for Approval of Final Distribution to Unsecured Creditors is approved, including without limitation the payment of interest on filed and allowed unsecured claims at the federal legal rate of 4.2% per annum from May 27, 1992 to January 31, 1994.

2. After payment of the balance of the filed and allowed unsecured claims, including post-petition interest thereon and the balance of administrative expenses of the estate, any surplus cash and property shall be returned to Debtor.