**In re James A. GAINES and Elaine V. Gaines, Debtors.**

Bankruptcy No. 7–91–02598.

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

Feb. 3, 1995.

Byron R. Shankman, Dublin, VA, for debtors.

Clifford L. Harrison, VA, for Mr. Agnew.

## DECISION AND ORDER

ROSS W. KRUMM, Chief Judge.

This matter comes before the Court on the Debtor's objection to the claim of James C. Agnew for post-petition interest and attorneys' fees. A hearing was held on October 11, 1994, and a briefing schedule was set to allow the parties to further argue their positions to the Court. The matter has been briefed by both parties and is now ripe for decision.

## ISSUES

Two issues are raised by the Debtors' objection. First, is an unsecured creditor entitled to post-petition interest from the Chapter 11 bankruptcy estate when the Plan contemplates liquidation of the Debtors' assets, and the value of those assets exceeds the total amount of claims? Second, on the same facts, is the unsecured creditor entitled to attorneys' fees provided for in the underlying loan agreements?

## LAW

### Post–Petition Interest

Chapter 11 of the Bankruptcy Code does not address the question of whether post-petition interest is owed to creditors when the bankruptcy estate has assets which would create a surplus of funds in a liquidating plan. The general rule is that creditors are not entitled to receive post-petition interest in bankruptcy. 11 U.S.C. § 502(b)(2). Nevertheless, there are two important exceptions in the Code. First, oversecured creditors are entitled to post-petition interest on their claims. 11 U.S.C. § 506(b); *U.S. v.*

*Ron Pair Enterprises, Inc.,* 489 U.S. 235, 246, 109 S.Ct. 1026, 1033, 103 L.Ed.2d 290 (1989). Second, Chapter 7 allows for the payment of post-petition interest on unsecured claims when funds or property remain after all other claims are paid, but before the Debtor receives any property. 11 U.S.C. § 726(a)(5) reads as follows:

> ... property of the estate shall be distributed—(5) fifth, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection; and
>
> (6) sixth, to the debtor.

The question remains, however, whether this provision of Chapter 7 can be applied to a case under Chapter 11. Section 103(b) states that subchapters I and II of Chapter 7 apply only to cases under that chapter. Section 726 is located in subchapter II of Chapter 7. Therefore, the Code on its face does not apply section 726(b) to a case under Chapter 11.

However, section 726(a)(5) makes clear that one policy of the Code is that the debtor is not to receive a windfall at the expense of creditors in the event that there is a surplus after payment of all allowed claims. Chapter 11 also contains some indication that it should not be construed as a safe haven for Debtors who choose to use it as a vehicle for liquidation. Section 1129(a)(7)(A)(ii) states the requirement that, if a holder of a claim does not vote in favor of the plan, then the claimant is entitled to receive property having a value, as of the effective date of the plan, equal to, or greater than, the amount that would have been received had the debtor been liquidated in a Chapter 7.

Another section of Chapter 11 that sheds light on the policy of the Code is section 1129(b)(2)(B)(ii), also known as the absolute priority rule. Under this rule, a debtor who is unable to confirm a plan with the consent of creditors may only reach confirmation if the plan does not discriminate unfairly among classes of claims and is fair and equitable as to each dissenting class of claims. Section 1129(b)(2)(B) defines fair and equitable as to unsecured claimants to mean that the claimant either receives full payment of its allowed claim on the effective date of the plan, or that no junior class of interests receives any property at all on account of its claims. Although this section does not speak to whether interest is payable, it makes clear the policy that the debtors are the last claimants entitled to be paid in bankruptcy.

■ With no explicit statement from the Code on the issue before the Court, it is within the Court's discretion to determine if post-petition interest should be paid to unsecured claimants from funds remaining after liquidation. *In re David Green Property Management,* 25 BCD 430, 432, 164 B.R. 92 (Bankr.W.D.Mo.1994); *Groundhog, Inc. v. San Joaquin Estates, Inc. (In re San Joaquin Estates, Inc.),* 64 B.R. 534, 536 (9th Cir. BAP 1986). There is also authority holding that unsecured creditors are entitled to receive post-petition interest on their claims when the estate is solvent and a surplus remains after payment of the principal balances of all claims. *See David Green,* at 432–33, 164 B.R. 92; *San Joaquin,* 64 B.R. at 536. In fact, the Ninth Circuit Bankruptcy Appellate Panel held that a bankruptcy court abused its discretion by not awarding post-petition interest to an unsecured claimant when the debtor is "very solvent, [and] similar creditors in Chapter 7 would receive post-petition interest on their claims." *San Joaquin,* 64 B.R. at 536.

### Attorneys' Fees

The Code makes no provision for the payment of attorneys' fees to an unsecured creditor when the debtor is solvent. Also, there is scant case law on point. One court has analyzed the issue of whether an unsecured creditor of a solvent debtor is entitled to attorneys' fees provided for in the loan agreement by analogy to the question of allowance of post-petition interest on unsecured claims. *See In re Continental Airlines Corp.,* 110 B.R. 276, 279–81 (Bankr.S.D.Tex. 1989). In *Continental Airlines,* the court cited many of the cases relied on by the court in *David Green,* and concluded that there was "no logical reason to prohibit the allowance of attorneys' fees for professional services rendered in successfully establishing a

disputed unsecured claim when the debtor is solvent." *Continental Airlines*, 110 B.R. at 280. "[T]he exception appears to be a balance of the equities between the creditor and the debtor. The debtor should not be entitled to any surplus of property of the estate until all the creditors' allowed claims, including interest, are paid in full." *Id.*

## DISCUSSION

### Post–Petition Interest

The initial issue to be given consideration is whether the Debtors' confirmed Chapter 11 Plan forbids the payment of interest on the claim of Mr. Agnew. An examination of the Plan reveals nothing that would prevent the Court from awarding such relief. Article V, paragraph one, states that the Plan will resolve all claims, but that only claims allowed pursuant to section 502(a) will be treated as stated in Article V. Article IV, paragraph five, includes in Class five, "Creditors paid as result of the outcome of the Adversary Proceeding, including James C. Agnew...." Article V, paragraph five, states only that Class five creditors will be paid in full. Article VI, paragraph one, refers to the "approximately two hundred and thirty-two thousand dollars ($232,000.00) disputed claim of James C. Agnew...." All of the sections of the Plan that make reference to the claim of Mr. Agnew contemplate that it will be paid in accordance with the determination of this Court. The Court finds that the Plan includes no limit on the payment of post-petition interest on Mr. Agnew's claim.

When the Debtors filed their bankruptcy case, the choice of chapter under which they would file was entirely in their control. Had the Gaines chosen Chapter 7, Mr. Agnew would have been entitled to interest on his claim at the federal legal rate from the date the petition was filed until he was paid in full. 11 U.S.C. § 726(a)(5). The Debtors would not have been allowed by the Code to retain any surplus property after the liquidation unless interest was paid on all unsecured claims. In choosing Chapter 11, the Debtors have maintained more control over the process of liquidating their estate and have proposed and achieved a confirmed plan. In contesting Agnew's claim, the Debtors ask

this Court to adopt their argument that, absent a specific Code section in Chapter 11, they are not required by the Code to pay post-petition interest to unsecured claimants even though a liquidation under Chapter 7 would yield a different result. This Court finds that equity dictates a different result.

█ If solvent debtors in Chapter 11 are allowed to avoid paying post-petition interest on unsecured claims, then they would receive a windfall at the expense of creditors. When credit is extended pursuant to an agreement, all parties reasonably expect that the agreement will be carried out. Nevertheless, honest, but unfortunate, debtors sometimes find themselves in intractable financial situations from which they have no means of escape and they take refuge in the Bankruptcy Code. The Code makes it possible for them to start anew, free of the obligations that they improvidently undertook. But the Code also serves to protect creditors by requiring fairness and equity in the distribution of a debtor's property.

█ If solvent debtors are to be allowed to receive the Code's benefits, then they must pay *all* of their obligations before retaining any property. Otherwise, solvent debtors would have the option of filing a Chapter 11 petition and extinguishing a creditor's right to interest from the petition date through the date they are fully paid the allowed amount of their claim. In the meantime, the debtors would have full use of their surplus property (in this case their home) at the expense of creditors. This outcome would clearly not obtain in Chapter 7 and, absent a specific provision in the confirmed plan denying post-petition interest, should not prevail in this Chapter 11.

█ The Debtors argue that, since there is no analog to section 726(a)(5) in Chapter 11, the Court has no power to require the payment of post-petition interest to unsecured creditors. As well, they distinguish any authority that so holds by pointing out that in those cases the debtors had already liquidated and the court was rendering its decision in light of a surplus of funds on hand. In this case, they point out, the Debtors' property is only now being marketed and has

yet to be sold. Any surplus is merely speculative. *See* Debtors' Memorandum of Law in Support of Objection to Claim, at 3. This point raises a distinction without a difference for two reasons. First, the Debtors' Plan contemplates that all of their property will be sold only in the event that it is absolutely necessary. Under Article VI of the Plan, the Debtors will attempt for one year to sell their commercial real estate by way of commercially reasonable methods. If a contract is not entered into by the expiration of that time, the commercial real estate will be sold at auction. At that point the Debtors will begin to market the rest of their real estate by way of commercially reasonable methods. Should no contracts be forthcoming at the expiration of that year—two years after the effective date of the Plan—the remainder of Debtors' property will be sold at auction. In addition, the Plan contains the following term:

> The property will be auctioned with the sale of debtors' residence to occur last and only in the event the sale of all other parcels of real estate fail to generate such funds as are necessary to pay First National Bank of Christiansburg and James C. Agnew.

Plan of Reorganization, Article VI, ¶ 6. An examination of this stratified scheme of liquidation leaves the Court with the clear impression that the Debtors expect to leave bankruptcy with excess assets.

The second reason that Debtors' argument is unpersuasive is that, should the sale of their property not raise funds sufficient to pay all of their creditors in full, a decision of this Court to allow post-petition interest on unsecured claims will necessarily be mooted because all assets will have been liquidated and the Debtors will have paid all they can pay.

Finally, the Debtors' Plan contemplates an orderly, but controlled liquidation by commercially reasonable means over more than two years. Until the sales are completed, Mr. Agnew will receive nothing except an initial payment of approximately $50,000.00. Plan of Reorganization, Article VI, ¶ 7. Thus, according to the Plan, it could take longer than two years before the remaining $182,000.00 will be paid. Such an imposition on Mr. Agnew does not comport with a reasonable balance of the equities in light of the fact that the Debtors will be enjoying the benefit of Mr. Agnew's money (interest free, no less) by retaining their property for up to two years.

### Attorneys' Fees

The same considerations that are persuasive in the context of post-petition interest on unsecured claims apply in the context of attorneys' fees. While there is no general right to reimbursement of such fees for unsecured creditors in bankruptcy, the Code and a fair balancing of the equities dictate a different result on the facts at bar. Under the loan agreements between Mr. Agnew and the Debtors, attorneys' fees are provided in the event of default and later collection efforts. *See* Defendant's Exhibits B and C. According to the Debtors' argument, their use of bankruptcy strips Mr. Agnew of his right to attorneys' fees due under the terms of the notes on which the Debtors are makers and Agnew is the payee. Yet, the Debtors expect to retain their home after completing their Plan. In the event these Debtors are solvent, they are not entitled to use Chapter 11 to avoid the requirements of their loan agreements with Mr. Agnew. *See In re San Joaquin Estates,* 64 B.R. 534, 536 (9th Cir. BAP 1986) (abuse of discretion not to award post-petition interest in Chapter 11 where debtor is "very solvent"). Attorneys' fees for determination and collection of this claim are compensable.

### CONCLUSION

Article V, paragraph 5.5 of the confirmed Plan provides:

> 5.5 Class 5 Creditors will be paid in full in the manner outlined in this plan.

The debtor's Plan does not place any definition of the term "in full." Absent a definition, the Court must give full weight and import to the term as commonly understood. In this case the plain meaning of "in full" is the principal amount of the debt as of the filing of the petition, interest thereon prepetition, interest post-petition until paid, and

such attorneys fees as are provided for in the contract of the parties.

Since this Chapter 11 is a controlled liquidation, it has striking similarities to a Chapter 7. Therefore, treatment of post-petition interest and the rate of interest should parallel Chapter 7 proceedings. Relevant authority and the balance of the equities establish that Mr. Agnew should receive post-petition interest on his claims before the Debtors are themselves permitted to receive any surplus from their bankruptcy estate. 11 U.S.C. § 726(a)(5) states that interest should be paid at the federal legal rate. Even though this is a Chapter 11 case, a similar result is indicated.

The same considerations that persuade the Court that Mr. Agnew is entitled to post-petition interest support his request for attorneys' fees provided for in the notes evidencing his claim. For the foregoing reasons the Court finds that the Debtors' objection to the claims of James C. Agnew are not well founded. Accordingly, it is

### ORDERED:

That the Debtors' objection to the claim of James C. Agnew is DENIED. And it is

### FURTHER ORDERED:

That James C. Agnew's claim for post-petition interest on his claim is GRANTED. Such interest shall accrue from the date the Debtors filed their bankruptcy petition, October 11, 1991, until the claim is paid in full according to the terms of the confirmed Plan. Interest shall accrue at the federal judgment rate, as it may fluctuate, until paid in full. And it is

### FURTHER ORDERED:

That James C. Agnew's claim for attorneys' fees provided for in the notes evidencing the Gaines' debt to him is GRANTED in the amounts provided for by the notes evidencing the debts. And it is

### FURTHER ORDERED:

That in payment of the claims the Debtors shall pay all allowed claims as provided for in the Plan and defer payment of post-petition interest and attorneys' fees on the Agnew claim until all other amounts called for by the Plan are paid in full. And it is

### FURTHER ORDERED:

In the event that liquidation of the bankruptcy estate does not provide funds sufficient to pay all claims in full and leave the Debtors with a surplus, post-petition interest and attorneys' fees will not be payable. The maximum amount payable under the Plan is the liquidation value of all of the assets which the Gaines' offered in their Plan for liquidation.