### In re COUNTRY MANOR OF KENTON, INC., Debtor.

#### No. 93–32224.

United States Bankruptcy Court, N.D. Ohio.

May 25, 2000.

Mary Ann Whipple, Toledo, OH, for trustee.

John N. Graham, Toledo, OH, trustee.

D. Jeffery Rengel, Sandusky, OH, for Leroy Baumeister.

## DECISION AND ORDER

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court upon the Trustee's Objection to the Proof of Claim submitted by Mr. Baumeister, a creditor of the above captioned debtor. The relevant facts of this case, which the Parties do not dispute, are briefly as follows:

Mr. Baumeister and other entities under Mr. Baumeister's control were the holders of various unsecured claims against the Debtor's bankruptcy estate. Pursuant to theses claims, Mr. Baumeister filed a proof of claim in the amount of Thirteen Thousand Seven Hundred Ninety-eight and 40/100 dollars ($13,798.40), against which the Trustee did not interpose an objection. Thereafter, pursuant to an order entered by this Court, an immediate partial distribution from the Debtor's bankruptcy estate was authorized, which subsequently resulted in Mr. Baumeister, and the Debtor's other unsecured creditors being paid in full on their proofs of claim. However, not long after this distribution was made, it became apparent that additional funds would likely become available to pay all of the Debtor's unsecured creditors at least some postpetition interest in accordance with 11 U.S.C. § 726(a)(5). Accordingly, Mr. Baumeister filed an additional proof of claim (Claim No. 112) seeking postpetition interest on his original claim at an annual rate of twelve percent (12%), the amount of which represents the interest rate the Debtor originally agreed to pay Mr. Baumeister. The Trustee, however, has objected to Mr. Baumeister's entitlement to interest at the rate of twelve percent (12%) on the grounds that § 726(a)(5) does not permit a party to recover interest in accordance with their original contract or agreement. Instead, according to the Trustee, § 726(a)(5) limits a creditor's recovery of postpetition to the federal judgment rate established under 28 U.S.C. § 1961.[1]

---

1. For purposes of this case, this rate stands at 3.58%.

On January 7, 2000, the Court held a Hearing on this matter at which time the Court heard the arguments presented by each of the Parties. Thereafter, the Court took the matter under advisement, and permitted the Parties to submit Briefs in support of their respective positions. The Court has now had the opportunity to consider all of the evidence presented in this case, including the legal arguments put forth by the Parties, and is now ready to render its decision in this proceeding.

## LEGAL ANALYSIS

The sole issue raised in this proceeding is whether a creditor, pursuant to § 726(a)(5), is entitled to receive a distribution of postpetition interest at the rate provided for in the parties' contractual agreement, or whether a creditor must accept the interest rate provided for in 28 U.S.C. § 1961. With regards to this issue, which is a matter of first impression for this Court, the Court necessarily begins its analysis by examining the language of the statute itself. *Director, OWCP v. Perini North River Associates,* 459 U.S. 297, 342, 103 S.Ct. 634, 660, 74 L.Ed.2d 465 (1983) (with matters concerning statutory interpretation, a court should begin its analysis with the language of the statute itself).

Section 726(a)(5) of the Bankruptcy provides that:

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

(5) fifth, in payment of interest at the legal rate from the date of the filing of the petition, on any claim paid under paragraph (1), (2), (3), or (4) of this subsection[.]

Section § 726(a)(5) thus sets forth the general rule that unsecured creditors are entitled to receive postpetition interest on their claim after all the classes of creditors listed in paragraphs one (1) through four (4) of § 726(a) have been paid in full on

their allowed claims.[2] Such a situation, although rare, normally arises when a solvent debtor files for bankruptcy relief. *In re Kentucky Lumber Co.,* 860 F.2d 674, 676 (6th Cir.1988). However, with regards to the issue presented in this case, § 726(a)(5) does not specify the exact interest rate at which a creditor's claim for postpetition interest is to be paid. Instead, as the above language illustrates, a creditor entitled to a distribution under § 726(a)(5) must simply be paid on his or her claim at the "legal rate," a term which is neither defined nor clarified by the Bankruptcy Code.

■ The lack of a precise definition for the term "legal rate" in § 726(a)(5) has lead, as might be expected, to divergent views as to how much interest a creditor can recover under § 726(a)(5). In particular, there presently exist what are essentially two different approaches as to how § 726(a)(5) should be applied with respect to the issue raised in this proceeding. First, there exists the state law approach, which holds, in conformance with the view espoused by Mr. Baumeister, that in implementing § 726(a)(5) Congress did not intend to change the pre-Code practice which allowed postpetition interest at either the parties' contract rate, the statutory rate (if a specialized statute establishes a specialized rate of interest for a particular creditor), or, if there is no applicable statute and no rate was contracted for, at the state judgment rate. *In re Schoeneberg,* 156 B.R. 963, 972 (Bankr.W.D.Tex. 1993). On the other hand, the view advanced by the Trustee, which is known as the federal judgment rate approach, holds that the "legal rate" under § 726(a)(5) denotes a single uniform rate, namely the federal judgment rate as provided for in 28 U.S.C. § 1961. *In re Chiapetta,* 159 B.R. 152, 160–61 (Bankr.E.D.Pa.1993); *In re Melenyzer,* 143 B.R. 829, 832–33 (Bankr. W.D.Tex.1992); *In re Godsey,* 134 B.R.

---

**2.** These classes of claims, in order of distribution, are: (1) priority claims specified in § 507; (2) timely filed general unsecured

claims; (3) tardily filed general unsecured claims; and (4) fines or penalties. 11 U.S.C. § 726(a).

865, 867–68 (Bankr.M.D.Tenn.1991). After examining each of these approaches, the Court finds that the latter approach, in which a single uniform rate is applied, is more legally sound. The following explains why.

In enacting § 726(a)(5) Congress chose to use the definite article "the" in front of the term "legal rate" rather than an indefinite article such as "a" or "an," which strongly suggests that Congress intended that a single rate of interest be used, as opposed to multiple rates of interest which would necessarily result if a contractual rate of interest was applied. *In re Melenyzer*, 143 B.R. 829, 830 n. 2 (Bankr. W.D.Tex.1992). In addition, had Congress desired to provide interest at the parties contractual rate under § 726(a)(5), it certainly knew how to specify such an arrangement, as numerous provisions of the Bankruptcy Code direct a court to examine the contractual arrangement between respective parties. *See In re Godsey*, 134 B.R. 865 (Bankr.M.D.Tenn.1991). For instance, § 506(b), provides that an oversecured creditor's "costs" are allowed to the extent "provided for under the agreement," hence begging the question, if both §§ 506(b) and 726(a)(5) were intended to refer to the agreed upon interest rate, why is the term "agreement" specified in one section and not the other. A further indication that postpetition interest under § 726(a)(5) is not allowed is based upon the disallowance of postpetition interest for "allowed claims, under § 502(b)". Specifically, § 502(b)(2), of the Bankruptcy Code mandates that, upon objection, a court must disallow a claim for "unmatured interest," a requirement to which no exception is permitted. As a result, upon a party objecting to a proof of claim such as occurred in the instant case, unmatured interest (i.e., postpetition interest) does not, under any circumstance, become a part of that creditor's allowed claim. By comparison, § 726 only permits distribution to creditors with allowed claims. *See* ¶¶ (2) & (5) of § 726(a). Therefore, as a result of § 502(b)'s disallowance of "unma-

tured interest" for an allowed claim, and § 726(a)'s mandate that a distribution only be made on allowed claims, a creditor's entitlement to postpetition interest under § 726(a)(5) could not be based upon that creditor's pre-bankruptcy contractual agreement to such interest. *See* Philip Bentley, *Post–Petition Interest: Do Judgement Rate Awards Shortchange Creditors?*, 12 NO. 6 Bankr. Strategist 5 (1995). This approach of limiting § 726(a)(5) to a single uniform rate is further supported by two additional policy considerations.

First, utilizing one unified rate for any distribution made under § 726(a)(5) provides a predictable and easily ascertainable rate to apply to a creditor's claim, and thereby facilitates administration of the debtor's bankruptcy estate. Second, by applying one rate to all creditors entitled to a distribution under § 726(a)(6), the prime bankruptcy goal of providing creditors with an equitable and ratable distribution of a debtor's assets is furthered. *See Begier v. IRS*, 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990) (a central policy of the Bankruptcy Code is the equitable distribution of a debtor's assets among its creditors). With regards to these two policy concerns, the bankruptcy court, in *In re Melenyzer*, in rejecting the state law approach, observed that:

> The problem with the state law approach is that different creditors will have different rates of interest, depending upon their contracts or the applicable statutory rate. One contract might provide for interest at 18%, another at 9%. One state statute might set the rate at 10%, another applicable statute a rate of 6%.
>
> . . . .
>
> Quite often, though, there are only enough assets to pay some interest to creditors, not enough to pay all creditors all the interest they claim at their contract or statutory rates. Using those rate [sic], some creditors would receive a

disproportionately large percentage of the remaining assets compared to their underlying unsecured claims, to the prejudice not of the debtor, but of other, otherwise equally situated, unsecured creditors.

143 B.R. 829, 832 (Bankr.W.D.Tex.1992).

Consequently, based upon the foregoing analysis, it seems evident that a creditor's right to receive postpetition interest at the contractual rate originally provided for in the parties' agreement is not supported in law. Accordingly, this Court holds that in implementing § 726(a)(5), Congress, by using the term "legal rate," intended that one uniform rate apply to any distribution made under this section. In adopting this view, the Court acknowledges, as Mr. Baumeister has pointed out, that utilizing one uniform rate for purposes of a distribution under § 726(a)(5) does deprive a creditor of the benefit of his or her bargain. However, bankruptcy by its very nature deprives creditors of the benefit of their agreement with a debtor. Consequently, such a factor, standing alone, does not persuade this Court to adopt a different view. However, the Court, although not making a ruling on the matter, does observe that a different result may be mandated, under principles of equity, if the debtor, and not the debtor's other creditors, were the entity receiving a distribution. (§ 726(a)(6) of the Bankruptcy Code provides that after postpetition interest has been paid to the unsecured creditors, any remaining funds are returned to the debtor.)

Before concluding, one final issue must be addressed; namely, what uniform interest rate should be applied when a distribution is made under § 726(a)(5)? In this respect, the Trustee has requested that the Court apply the interest rate for federal judgments as found in 28 U.S.C. § 1961. ■ In the case of *In re Dow Corning Corp.,* the bankruptcy court, in a very in-depth analysis, addressed this issue, and held, in conformity with the Trustee's assertion, that the federal judgment rate, as defined in 28 U.S.C. § 1961, constituted the "legal rate" as used in § 726(a)(5). 237 B.R. 380, 385–392 (Bankr.E.D.Mich. 1999). In making this determination, the Court reasoned that because an allowed claim, as defined in § 502 of the Bankruptcy Code, is equivalent to that of a money judgment, it then followed that 28 U.S.C. § 1961, which applies to federal judgments, must be used to determine the applicable rate of postpetition interest under § 726(a)(5). The Court considers this rationale legally sound and observes that it has been uniformly applied by other courts which have rejected the state law approach under § 726(a)(5). *See, e.g., Beguelin v. Volcano Vision, Inc. (In re Beguelin),* 220 B.R. 94, 100–01 (9th Cir. BAP 1998); *In re Chiapetta,* 159 B.R. 152, 161 (Bankr. E.D.Pa.1993); *Wasserman v. City of Cambridge,* 151 B.R. 4, 6 (D.Mass.1993). Accordingly, this Court, for the reasons expounded upon in *In re Dow Corning Corp.,* holds that the interest rate applicable to 28 U.S.C. § 1961 is equivalent to the "legal rate" used in § 726(a)(5).

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Trustee's Objection to the Proof of Claim submitted by Leroy Baumeister (Claim No. 112) be, and is hereby, SUSTAINED, and that the claim of Leroy Baumeister be, and is hereby, DISALLOWED.

It is **FURTHER ORDERED** that if sufficient funds are available in this case to make a disbursement under § 726(a)(5), that Leroy Baumeister be permitted to receive such a disbursement, pro-rata with the other allowed claims, at the federal judgment rate established in 28 U.S.C. § 1961.