**In re Delbert OGLE and Marion Ogle, Debtors.**

**No. 95–00557.**

United States Bankruptcy Court, D. Idaho.

Feb. 20, 2001.

Lary Walker, Weiser, Idaho, for debtors.

Joseph M. Meier and Bruce L. Thomas, Boise, Idaho, for Irene and Thomas Ogle.

Ronald D. Schoen, Payette, Idaho, Chapter 12 Trustee.

## MEMORANDUM OF DECISION

JIM D. PAPPAS, Chief Judge.

### I. Background.

In this Chapter 12 case, Creditors Tom and Irene Ogle ("Creditors") filed a Motion to Obtain Interest on Claim (Docket No. 192). Debtors Delbert and Marion Ogle objected (Docket No. 198). A hearing on the motion was held on January 24, 2001, after which this matter was taken under advisement. This Memorandum constitutes the Court's findings of fact and conclusions of law and disposition concerning that motion. Fed.R.Bankr.P. 7052; 9014.

### II. Facts

Debtors filed a petition for relief under Chapter 12 of the Bankruptcy Code on March 3, 1995. The filing was precipitated by the actions of Creditors, who are Delbert Ogle's parents, to foreclose a mortgage they held on real property sold to Debtors in 1981. During the bankruptcy case, Debtors objected to Creditors' proof of claim, asserting that enforcement of their mortgage was prohibited by the applicable state statute of limitations, and because the Idaho "one-action rule" prohibited an independent action on the note. On December 14, 1995, this Court issued its decision sustaining Debtors' objection on both grounds and disallowing Creditors' claim (Docket No. 46). Creditors appealed this decision to the District Court, which reversed this Court's decision on November 25, 1996 (Docket No. 105, Case No. CV 96–022–S–EJL). Debtors then appealed the District Court's decision to the Ninth Circuit Court of Appeals.

In the meantime, Debtors proposed several Chapter 12 plans, culminating in the Third Amended Chapter 12 Plan of Reorganization filed on November 27, 1996 (Docket No. 106). After negotiations, Debtors were able to obtain the consent of Creditors to confirmation of their plan, and an Order Confirming Third Amended Chapter 12 Plan, incorporating certain changes to the terms of the plan, was finally entered on February 6, 1997 (Docket No. 121). In that Order, prepared by Chapter 12 Trustee, Ronald D. Schoen, the parties acknowledged that Creditors' claim was currently on appeal to the Ninth Circuit. Among other things, the Order provided that all of Debtors' real and personal property would, upon confirmation of the plan, vest in the Trustee, and not revest in the Debtors as provided by the Code, and as is the common practice in this District. *See* 11 U.S.C. § 1228(b); Order Confirm-

ing Third Amended Chapter 12 Plan, ¶ 2(C)(2), (Docket No. 121). The Order further provided that:

> In the event a final order on the appeal is rendered in favor of Tom and Irene Ogle in the United States Court of Appeals for the Ninth Circuit, which appeal is currently pending before that Court, the trustee shall sell all real and personal property vested in the trustee sufficient to pay all allowed secured and unsecured claims in full.

Order, ¶ 2(C)(3)(c). The Order also provided that if there were any inconsistencies between the plan and the Order, the Order would control. Order, ¶ 2(D)(1). Additionally, the Order recited that "[t]he Plan and all amendments thereto meet the requirements of 11 U.S.C. § 1225...." Order, ¶ 1.

Thereafter, on March 25, 1997, the parties also entered into an agreement for entry of an order allowing Creditors' claim in the amount of $545,300, part of which was deemed secured, and part unsecured. Order Allowing Claim of Thomas and Irene Ogle (Docket No. 127). The effect of this agreement was also made subject to the determination of the rights of the parties in connection with the appeal to the Ninth Circuit. Importantly, however, this agreement and order contained a provision which gives rise to the current dispute. It provides, in part, that "[e]ach party is hereby authorized to reserve their rights and defenses concerning Creditors' entitlement to interest accruing postpetition on their claim...." Order Allowing Claim of Thomas and Irene Ogle, pp. 2–3 (Docket No. 127).

On July 31, 1998, the Ninth Circuit issued its opinion affirming the District Court's decision and allowing Creditors' claim. The Court decided that even if the statute of limitations barred Creditors' right to enforce the mortgage, they were still entitled to enforce the underlying promissory note as an unsecured claim. *Ogle v. Ogle*, 156 F.3d 1238, 1998 WL 466686 (9th Cir.1998) (unpublished disposition). While this decision determined Creditors held an enforceable claim against Debtors for purposes of the Chapter 12 case, it did not decide whether Creditors were entitled to collect postpetition interest on that claim under Debtors' confirmed plan, an issue which the parties had expressly reserved in the Bankruptcy Court.

Following confirmation, Trustee worked diligently and liquidated several parcels of Debtors' property in order to pay the secured and unsecured claims as provided by the plan. The issue of whether Creditors are entitled to postpetition interest on their claim arises because the bankruptcy estate has proven to be solvent. In other words, from the property sale proceeds, Trustee has paid all creditors' claims other than Creditors. The parties agree the balance due on Creditors' prepetition claim is $90,718.37. However, if Creditors are entitled to postpetition interest, Trustee calculates the amount due on their claim to be $200,607.46.[1] Substantial property remains to be liquidated by the Trustee, if necessary. While the liquidation value of this property is of course uncertain, all seem to agree that a sale of these remaining properties would generate more than enough to pay whatever amounts may be

---

**1.** Creditors' calculations of the amount due on their claim were different than the Trustee. However, at hearing, Creditors agreed to accept Trustee's calculations. In addition, in Trustee Report, he uses a 7% rate of interest in his calculations, the rate provided in the promissory note. Debtors agree Trustee's calculations are correct, but they have not stipulated the rate used is the correct one.

due to Creditors.[2] Under these circumstances, Trustee requested that Creditors file the instant motion to guide his future liquidation efforts. Creditors concurred, and filed their motion on December 22, 2000. Debtors objected to the motion on January 22, 2001.

### III. Discussion

#### A. Are Creditors Entitled to Postpetition Interest?

■ Creditors assert that they are entitled to postpetition interest under the Bankruptcy Code. They first point to Section 1225(a)(4), the so-called "best interests of creditors test" for confirmation of a Chapter 12 plan, which provides:

Except as provided in subsection (b), the court shall confirm a plan if—

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.

11 U.S.C. § 1225(a)(4). Creditors then refer the Court to Section 726(a), which prescribes the priorities of distributions in a Chapter 7 case. While Section 726 is not technically applicable in Chapter 12 cases, *see* 11 U.S.C. § 103(c), Creditors argue it is instructive here. They contend that since Section 1225(a)(4) requires any confirmed plan to pay unsecured creditors at least the amount they would receive if the case was one under Chapter 7, and since under these facts, Section 726(a)(5) would require payment of postpetition interest at the legal rate to creditors prior to any

surplus being returned to Debtors were this a Chapter 7 liquidation case, that in order for their claim to be properly treated under Debtors' plan, they must receive postpetition interest here. Put another way, they argue that since here the Court confirmed Debtors' plan, it must be assumed that the plan would be implemented in such a way as to satisfy the best interests test.

Debtors are unconvinced by Creditors' resourceful construction of the Code. Debtors assert that even if the best interests test applies, an appropriate analysis would focus upon what creditors could have expected to receive in a hypothetical liquidation completed "as of the effective date of the plan," not now. Debtors suggest it would be incorrect to focus upon what creditors would receive as a result of Trustee's actual liquidation of their assets, which includes what they feel was significant appreciation in the value of their property over the last four years since confirmation. Debtors argue that they, not Creditors, should enjoy the benefit of any postconfirmation appreciation in the value of the assets. Instead, Debtors suggest that the Court must "retroactively" value their assets as of the date their plan was confirmed to determine if there should be any postpetition interest payable to Creditors.

At first blush, it would seem the Court need not attempt to apply the best interests test of Chapter 12, retroactively or at all. So, too, the Court should not need to borrow concepts from Chapter 7 to decide whether Creditors should receive postpetition interest. Rather, the answer to this question should begin and end with an

---

**2.** The following parcels and items of property apparently remain available for liquidation: an 80–acre parcel commonly known as the "Legg Place" (Creditors' estimate of value = $144,000); an 112–acre parcel of grazing land ($45,000); a 162.99–acre parcel commonly known as the Home Place ($249,000); and 200 head of cattle ($80,000). Motion by Tom and Irene Ogle to Obtain Interest on Claim (Docket No. 192).

interpretation of the meaning of the terms of Debtors' confirmed Third Amended Chapter 12 Plan. Under the novel facts presented here, though, that approach is effectively foreclosed.

Obviously, the terms of Debtors' confirmed plan, as modified or supplemented by the terms of the order confirming the plan, bind Debtors, Creditors, and Trustee alike, so its provisions must be followed. 11 U.S.C. § 1227; *Agricredit Acceptance L.L.C. v. U.A.P. Northwest (In re Mickelsen)*, 00.3 I.B.C.R. 147, 148 (Bankr.D.Idaho 2000) (citing *Arkison v. Plata (In re Plata)*, 958 F.2d 918, 921 (9th Cir.1992)) ("It is fundamental that the provisions of a confirmed Chapter 12 plan bind the debtors and all their creditors."). In this case, while the Order Confirming Third Amended Chapter 12 Plan (Docket No. 121) indicates all allowed secured and unsecured claims would be paid "in full," no provisions in the plan or order can be found addressing whether this treatment was to include payment of postpetition interest. The parties seem to acknowledge as much when they later stipulated to entry of the Order Allowing Claim of Thomas and Irene Ogle (Docket No. 127). This Order specifies that Creditors shall be deemed to hold an allowed claim in the amount of $545,300, which "shall be paid in accordance with the confirmed Chapter 12 plan." Order, p. 2. However, this Order also explicitly reserved the parties' rights and defenses to a later determination regarding allowance of postpetition interest. Therefore, the Court concludes from a review of Debtors' confirmed plan, the order confirming that plan, and the stipulated order concerning allowance of Creditors' claim, that the parties, in effect, "agreed to not agree" whether Debtors' unsecured creditors would receive postpetition interest if funds became available through the liquidation process.

Since the plan and other binding documents in this case are of no assistance, the Court turns to precedent for a solution. Unfortunately, neither the parties nor the Court could locate case law discussing an unsecured creditor's entitlement to postpetition interest in the Chapter 12 context where the plan is silent on this point. However, a recent Chapter 13 is instructive. In it, the Ninth Circuit Bankruptcy Appellate Panel held that when the debtor is solvent, postpetition interest may be allowed to unsecured creditors. *Beguelin v. Volcano Vision, Inc. (In re Beguelin)*, 220 B.R. 94, 98 (9th Cir. BAP 1998). The existence of a Chapter 13 decision helps, "[b]ecause the confirmation requirements in Chapters 12 and 13 cases are virtually identical, [and] courts have uniformly considered rulings under one chapter's provision to be applicable in the other." *In re Palmer*, 224 B.R. 681, 684 (Bankr.S.D.Ill. 1998); *see also First National Bank of Malden v. Hopwood (In re Hopwood)*, 124 B.R. 82, 85 n. 2 (E.D.Mo.1991); *In re Ryan*, 228 B.R. 746, 747 n. 2 (Bankr.D.Or. 1999). Indeed, the language of Sections 1225(a)(4) and 1325(a)(4) are identical, both requiring as a condition of confirmation that unsecured creditors receive at least as much under the plan as they would receive in a hypothetical liquidation under Chapter 7 occurring on the effective date of the plan.

In *Beguelin*, the creditor objected to confirmation of the plan because the solvent debtor had limited postpetition interest payable to unsecured creditors to that accruing from the date of confirmation, rather than from the date of the filing of the bankruptcy petition. The Panel rejected this proposed treatment and held that "[p]ursuant to §§ 1325(a)(4) and 726(a)(5), postpetition interest in a chapter 13 case clearly accrues from the date of the petition through and beyond the effective date of the plan." *Beguelin*, 220 B.R.

at 99. *See also In re Weiss,* 251 B.R. 453, 463–64 (Bankr.E.D.Pa.2000). To come to this result, certainly the Panel must have concluded that as a condition of a solvent debtor's right to confirm a plan, that plan must pay creditors postpetition interest.

Cases under Chapter 11 have been handled by the courts in much the same way. Section 1129(a)(7)(A)(ii), one of the confirmation requirements for Chapter 11 plans, is in substance quite similar to Sections 1225(a)(4) and 1325(a)(4).[3] Interpreting this Chapter 11 provision in *Groundhog, Inc. v San Joaquin Estates, Inc. (In re San Joaquin Estates, Inc.),* 64 B.R. 534 (9th Cir. BAP 1986), the B.A.P. concluded that whether payment of postpetition interest to unsecured creditors is required to satisfy the Chapter 11 best interests test is a matter submitted to the bankruptcy court's discretion, and such a requirement may be imposed when the bankruptcy estate is solvent. *Id.* at 536. The Panel concluded that the decision of the bankruptcy court not to require payment of postpetition interest was an abuse of discretion because Section 726(a)(5) would require postpetition interest to be paid to the extent of any surplus of assets in a liquidation. According to the B.A.P., then, at least in Chapter 11, a solvent estate must pay unsecured creditors postpetition interest. *Id.* Notably, as in the instant case, the parties in *San Joaquin Estates* had at confirmation specifically stipulated to reserve their right to claim accrued and accruing interest. *Id.* at 534.

The result in *San Joaquin Estates* has been followed by other courts. For instance, in two similar cases where the confirmed plans provided for payment to unsecured creditors "in full," both courts required postpetition interest to be paid. *See In re Gaines,* 178 B.R. 101, 104–05 (Bankr.W.D.Va.1995) (holding that debtors would receive an unfair windfall if they were not required to pay postpetition interest prior to retaining a surplus, as required by Section 726(a)(5)); and *In re David Green Property Management,* 164 B.R. 92, 96–97 (Bankr.W.D.Mo.1994) (finding that the equities favored allowing postpetition interest in order to effect the purposes of Chapter 11 and the debtor's confirmed plan).[4]

In their arguments to the Court, Debtors make much of the fact that in their original Schedule A, they valued the real property at $345,000, and their livestock and machinery at $103,110. Debtors also listed $484,518 in secured claims in those Schedules.[5] Therefore, Debtors argue

3. Section 1129(a) provides the following:
The court shall confirm a plan only if all of the following requirements are met:
(7) With respect to each impaired class of claims or interests—
(A) each holder of a claim or interest of such class—
(i) has accepted the plan; or
(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date....

4. For contrast, *see M & I Thunderbird Bank v. Birmingham (In re Consolidated Water Utili-ties),* 217 B.R. 588, 592 (9th Cir. BAP 1998), where the Panel held that unsecured creditors were *not* entitled to postpetition interest when the Chapter 11 debtor later proved solvent because the creditors had voted to accept, and the bankruptcy court had confirmed, a plan providing for less than payment in full. Therefore, the best interests test did not apply.

5. Some of the calculations in Debtors' schedules are inaccurate. By the Court's calculations, the value of real property listed on Schedule A is $305,000, $104,100 for farm machinery, livestock, and feed, while the amount of secured claims is $486,795.83. However, given the Court's determination, these inaccuracies are unimportant.

that they were "clearly" insolvent as of the petition date.

Of course, neither the Court nor Creditors would have been bound by the values stated by Debtors for their assets in their schedules. Instead, Debtors would have had to prove, as a matter of fact, that their plan paid unsecured creditors enough to satisfy the best interests test as confirmation. 11 U.S.C. § 1225(a)(4); *In re Larson*, 122 B.R. 417, 421 (Bankr.D.Idaho 1991); *see also In re Tofsrud*, 230 B.R. 862, 872 (Bankr.D.N.D.1999). It is speculation to assume that had the issue been tried at confirmation, the Court would have found Debtors were "clearly" insolvent based solely on their opinions of the value of the property. In making such decisions, the courts should rely upon actual sales prices as the most relevant evidence of value. *Hyman v. Plotkin (In re Hyman)*, 967 F.2d 1316, 1320 n. 9 (9th Cir.1992); *In re Heflin*, 215 B.R. 530, 535 (Bankr.W.D.Mich.1997).

Moreover, Debtors' schedules are inconsistent in the values listed for the same property. For instance, on Schedule D, where Debtors identify creditors holding secured claims, Debtors list the 864 acres which formerly belonged to Creditors as having a value of $250,000, while on Schedule A itemizing their real property, this farm was listed at $100,000. "Delbert's Home Place" is listed at $450,000 on Schedule D, and at $100,000 on Schedule A. The property known as the "Legg Place" was valued at $50,000 on Schedule D, while listed at only $40,000 on Schedule A. Finally, property known as the "Ted Moritz Place" was valued at $250,000 on Schedule D while only listed at $40,000 on Schedule A. If the values of the property on Schedule D are considered, Debtors' real property, cattle, equipment, and feed totals $1,115,000, a substantially higher figure than the $345,000 listed on Schedules

A and B. Under such scenario, even if all of the secured claims listed on Debtors' schedules plus Creditors' claim, which was listed as an unsecured, disputed claim of $447,000 on Schedule F, were paid, Debtors were likely solvent on the date of their petition, as their assets exceeded their debts by $323,000. Obviously, if looking solely to their schedules, Debtors' solvency was less than clear.

Debtors' position also seems a bit disingenuous. After arguing in their pleadings that they were insolvent on the petition date, in the next breath, Debtors recite the following in support of their contention that postpetition interest should not be allowed to Creditors:

> Because the debtors Plan provided liquidation over 5 years, the debtor, the debtor's counsel, the Trustee, and the appointed realtor worked closely together to divide the properties of the estate into smaller properties that would sell for the highest price possible in hopes that there would be sufficient (sic) to pay all creditors in full and retain some property for the debtors to maintain a residence and gain a new start.

Objection to Motion for Postpetition Interest, ¶ 12. Apparently, Debtors contemplated that upon liquidation of their properties, there was some prospect that a surplus would be generated so that they could "retain some property . . . and gain a new start."

Debtors assert that the surplus is available here solely because their property has appreciated substantially since they filed their petition, and that in order to protect their right to a fresh start, Debtors should be entitled to the benefit of the appreciation. As pointed out above, Debtors' argument is premised upon the conjecture that their property truly did appreciate, as opposed to the notion that they, for whatever reason, substantially undervalued the

property in their bankruptcy schedules. Even assuming the property did increase in value after confirmation, in the context of Chapter 7 liquidations, the Ninth Circuit has consistently held that postpetition appreciation of estate property enures to the benefit of the bankruptcy estate rather than the debtor. *Viet Vu v. Kendall (In re Viet Vu)*, 245 B.R. 644, 647–48 (9th Cir. BAP 2000); *Schwaber v. Reed (In re Reed)*, 940 F.2d 1317, 1323 (9th Cir.1991). That the bankruptcy estate and creditors benefit from any appreciation here is justified since Debtors' own plan provides that, upon confirmation, their property vested (and is still vested) in Trustee, so he could effectively liquidate that property for the benefit of the creditors. Under these facts, any appreciation in value of the assets belongs to the bankruptcy estate and creditors.

Debtors also complain that Creditors waited several years to assert their claim to postpetition interest. However, as Trustee reminded the parties and the Court at hearing, either Debtors or Creditors could have sought an earlier determination regarding Creditors' entitlement to postpetition interest, but neither chose to do so. While perhaps Creditors should have forced the issue sooner, Debtors also engaged in a "wait and see" approach, and in doing so, lost any advantage they may have had from an earlier valuation of their property. No time-frame for raising the issue was delineated in Debtors' confirmed plan, the order confirming the plan or in the Order Allowing Claim of Thomas and Irene Ogle, to which Debtors stipulated. Instead, Debtors elected to wait until later to determine what their plan truly meant when it said they would pay claims "in full." Debtors' claim of laches is unpersuasive.

At bottom, the Court should assign a plain meaning to the concept of payment "in full" as embodied in Debtors' confirmed plan, recognizing that neither the plan, order confirming the plan, or stipulated order regarding Creditors' claim provide a definition. In a similar situation, another court observed that:

> Absent a definition, the Court must give full weight and import to the term as commonly understood. In this case the plain meaning of in full' is the principal amount of the debt as of the filing of the petition, interest thereon prepetition, interest postpetition until paid, and such attorneys fees as are provided for in the contract of the parties.

*In re Gaines*, 178 B.R. 101, 105–06 (Bankr. W.D.Va.1995). The Order Confirming Third Amended Chapter 12 Plan (Docket No. 121) recites that Creditors would be paid in full. Order, ¶ 2(C)(3)(c). That order also recites that Debtors' plan complied with the requirements of Section 1225. *Id.* at ¶ 1. In turn, the Order Allowing Claim of Thomas and Irene Ogle (Docket No. 127) states Creditors' claim would be paid in accordance with the confirmed Chapter 12 plan. Order, p. 2. Without the benefit of a current valuation of Debtors' assets, the only way Debtors' confirmed Chapter 12 plan could have met the best interests of creditors test when it was confirmed was if it provided, impliedly if not expressly, that Creditors would receive postpetition interest on their claim prior to any surplus being returned to Debtors, as required by a liquidation analysis under Section 726(a). Admittedly, the Court's conclusion is the product of hindsight. However, Debtors could have avoided the effect of this kind of analysis by raising the issue at any time. Because they did not, they cannot now expect the Court to choose a hypothetical valuation of their assets at some past date over the actual sales prices received from armslength sales effected by Trustee. Since it is undisputed that sufficient assets remain

to pay Creditors postpetition interest, the Court would require such in order for Debtors' confirmed plan to be completed.

In short, while the Court cannot know for certain what the parties intended "in full" to mean when that language was utilized in Debtors' confirmed plan, for the reasons set forth above, the Court concludes that plan requires payment of postpetition interest on Creditors' claim.

### B. What Rate of Interest Should Apply?

■ Having decided Creditors are entitled to payment of postpetition interest under the terms of Debtors' Chapter 12 plan, the Court must next determine the rate at which the postpetition interest accrues. Since the plan is unclear that interest is payable at all, the plan also provides no guidance to the Court in fixing an appropriate rate. Trustee and Creditors have both assumed the rate of interest should be 7% per annum, presumably because that is the rate provided in the promissory note given by Debtors to Creditors. Debtors have not specifically objected to this rate, but then they felt no interest was owed at all.

Once again, because the confirmed plan is silent, the Court looks to the provisions of Chapter 7 for guidance in fixing an appropriate rate payable to unsecured creditors of a solvent bankruptcy estate. Under Section 726(a)(5), if there are sufficient funds to pay postpetition interest to unsecured creditors, it must be paid "at the legal rate" before any surplus is returned to the debtor. 11 U.S.C. § 726(a)(5). There are two lines of authority which consider the meaning of this phrase. Under one approach, focusing on the creditors' state law rights, the courts calculate interest at the rate the creditor could expect to recover outside bankruptcy. If a creditor's claim is founded upon a

contract specifying a rate of interest, the contract rate would be applied in the bankruptcy case. Absent an interest rate provision in the underlying contract, then either a specialized rate of interest for specific types of creditors or the state judgment rate of interest is applicable. *Beguelin,* 220 B.R. at 94, 99. Under another approach, which emphasizes the need to apply federal law, one uniform rate is applicable to the claims of all unsecured creditors: the federal post-judgment interest rate established by 28 U.S.C. § 1961. *Id.*

Many of the courts supporting the state law approach are concerned that utilizing the federal post-judgment interest rate would bestow an unwarranted windfall on the debtor and would not provide creditors with the benefit of their bargain. *See, e.g., In re Carter,* 220 B.R. 411, 416–17 (Bankr. D.N.M.1998). On the other hand, "bankruptcy by its very nature deprives creditors of the benefit of their agreement with a debtor. Consequently, such a factor, standing alone, does not persuade this Court to adopt a [state law rate]." *In re Country Manor of Kenton, Inc.,* 254 B.R. 179, 181 (Bankr.N.D.Ohio 2000). In *Beguelin,* the Panel noted the difficulty stemming from applying the contract rate or state judgment rate to the individual claims of unsecured creditors:

> It is not hard to imagine the administrative nightmare that bankruptcy trustees would otherwise face if they were required to calculate a different interest rate, based on a different source of interest rate, for each creditor ... The logistical difficulties would be particularly burdensome in those cases that involve a large number of creditors from multiple jurisdictions.

220 B.R. at 101. A single rate would also promote fairness and predictability in the distribution of postpetition interest, and

would utilize federal law to decide what is essentially a federal issue. *Id.* at 100; *see also In re Country Manor of Kenton, Inc.,* 254 B.R. at 183; *In re Vogt,* 250 B.R. 250, 263 (Bankr.M.D.La.2000); *In re Dow Corning Corp.,* 237 B.R. 380, 412 (Bankr. E.D.Mich.1999). Indeed, even one of the courts adopting the state law approach implicitly acknowledged the potential problems which might arise if there was a surplus to distribute, yet not enough to pay postpetition interest to all creditors at their contract rate: "We do not have to determine what interest rate should be applied when there is not a sufficient surplus to pay interest in full at contract rates to all claimants. It seems, however, in that situation, the reasoning contained in *Beguelin* might be applicable." *Carter,* 220 B.R. at 417.

Of course, a debtor could propose a rate of postpetition interest to be paid on unsecured claims, 11 U.S.C. § 1225(a)(11), which, if the plan were confirmed would be binding on all concerned. 11 U.S.C. § 1227(a). In the absence of such a plan term, though, this Court is persuaded that adopting a single rate of interest applicable to all similarly situated unsecured claimants best embodies the bankruptcy policy promoting equity of distribution among creditors. Such a rule is also more practical and efficient [6]. To decide otherwise could conceivably require a trustee to determine the various contract rates for each creditor; if there is no contract rate, to determine the applicable state statutory rate; to apply the different rates to individual creditor claims; and then, if the available funds are inadequate to pay such interest, to recalculate the interest payable at the federal judgment rate. While not the case here, the Court has no desire to impose such an administrative burden on trustees and parties as forecast in *Beguelin.* To promote equitable treatment of all unsecured claims, as well as predictability and practicality, the Court concludes the federal post-judgment interest rate should apply to calculate the amount payable to Creditors under these facts.

## IV. Conclusion

As indicated above, no issue would have existed in this case had Debtors included express provisions concerning payment of postpetition interests in their proposed Chapter 12 plan. They did not, and so the Court is left to other resources in determining the meaning of the plan when it provides that creditors will be paid "in full." For the reasons stated above, the Court concludes it should be guided by the requirements of the best interests of creditors test embodied in Sections 1225(a)(4) and 726(a) in this case, and Creditors should receive payment of postpetition interest on their unsecured claim. Further, looking again to the provisions of Chapter 7 governing distributions for solvent bankruptcy estates for guidance, the Court concludes that the appropriate "legal rate" of interest to be applied to Creditors' claim is the federal post-judgment interest rate as determined under 28 U.S.C. § 1961.

A separate order granting Creditor's motion will be entered.

---

6. Under 28 U.S.C. § 1961(a), the federal judgment rate is determined with reference to the yield on Treasury securities sold at auction. It is a variable rate and changes from time to time to reflect changes in the economy, and information about the rate is readily available from the Clerk of the Court, or via the Internet at *www.uscourts.gov/postjud/pjrate.pdf.* As of November 28, 2000, the rate was 6.052%.